STATE OF NEBRASKA, EX REL. ELMER B. STEPHENSON, v. M. M. COBB.

FILED APRIL 4, 1895.  NO. 7226.

1. **Municipal Corporations**: ROAD TAXES: STATUTES. The provision of section 49 of the act of March 29, 1889, for the incorporation of cities of the first class, that "the road taxes collected from property in the city shall be paid to the city treasurer and expended as the council may direct," has reference merely to such taxes as are by general law collected for the use of the city as a road district, and was not intended as a repeal of the provision of section 76 of the general road law for the distribution of the county road fund.

2. **Statutes**: CONSTITUTIONAL LAW. But assuming the legislature

by the act first above mentioned to have intended a repeal of the
provision of the general road law for the distribution of the
county road fund so far as it affects cities of the first class, it is
within the restriction contained in section 11, article 3, of the
constitution and, therefore, void.

ERROR from the district court of Lancaster county.
Tried below before HALL, J.

*N. C. Abbott* and *Abbott, Selleck, & Lane,* for plaintiff
in error, cited: *State v. Howe,* 28 Neb., 618.

*W. H. Woodward, contra,* cited: *City of Tecumseh v.
Phillips,* 5 Neb., 505; *White v. City of Lincoln,* 5 Neb.,
505; *State v. Lancaster County,* 6 Neb., 474; *Burlington.
& M. R. R. Co. v. Saunders County,* 9 Neb., 507.

POST, J.

This was a proceeding by *mandamus* in the district court
for Lancaster county on the relation of Elmer B. Stephen-
son, as treasurer of the city of Lincoln, against M. M. Cobb,.
the respondent, as county treasurer, to require the payment
by the latter of certain moneys claimed by the city and be-
longing to the road fund of said county.

In order to reach an understanding of the question pre-
sented by the record it is necessary to examine certain pro-
visions of the statutes which appear to bear directly upon
the subject. It is provided by section 76 of the general
road law that "In counties not under township organiza-
tion, one-half of all the moneys paid into the county treasury
in discharge of road tax shall constitute a county road fund,
which shall be at the disposal of the county commissioners
for the general benefit of the county for road purposes.
The other half of all moneys paid into the county treasury
in discharge of road tax and all money paid in discharge
of labor tax shall constitute a district road fund, which
shall be paid by the county treasurer to the overseer of the
road district from which it was collected," etc. On April

7, 1891, an act was approved with an emergency clause, entitled "An act to amend section 76 of chapter 78, Compiled Statutes, [the general road law,] and to repeal said original section." (Laws, 1891, p. 314, ch. 43.) The only material amendment of the section mentioned is the addition thereto of the following: "*Provided,* That the commissioners of counties not under township organization may levy the same rate of tax upon the property within any incorporated city of the metropolitan class and cities of the first class as is levied upon property situated within the several road districts, and all moneys paid into the county treasury in discharge of road tax levied upon property within the corporate limits of any such city shall constitute a part of the general road fund of the county and be subject to the disposal of the county commissioners for the general benefit of the county and city, one-half of which shall go to the county for road purposes and one-half to the council of said cities to be used for road purposes." On the 29th day of March, 1889, there was approved "An act to incorporate cities of the first class, and regulating their duties, powers, government, and remedies," and which will, for convenience, be referred to as the charter of the city of Lincoln, which is, as alleged, a city of the first class within Lancaster county,—a county not under township organization. We find therein no authority for a road tax, but in section 49, after a provision for the levy of taxes for various purposes incident to municipal government, is used the following language, evidently referring to the tax contemplated by the general road law, viz.: "The road taxes collected from property in the city shall be paid to the city treasurer and expended as the council may direct." On the 9th day of April, 1891, an act was approved entitled "An act to amend sections 1, 10, 12, 13, 14, 17, 25, 26, 27, 42, 46, 49, 52, subdivisions 3, 6, and 31 of section 67 and sections 69, 81, 84, 87, and 91 of an act entitled 'An act to incorporate cities of the first class,'" etc., and to repeal said original

sections and subdivisions. The amendments therein of section 49 are few and unimportant and in no way relate to the provision under consideration.

Counsel for the relator appear to regard the provisions above quoted as irreconcilable, from which they argue that the re-enactment of section 49 of the city's charter on April 9, 1891, two days later than the re-enactment of section 76 of the road law, being the latest expression of the legislative will, worked a repeal of the previous act in so far as they are inconsistent with each other. But we believe the alleged inconsistency to be imaginary rather than real, and that when we take into consideration the history and evident purpose of the respective provisions there will be found no difficulty in giving effect to both. In the first place, the general law merely provided for payment of one-half the county road fund to the overseer of the road district from which it was collected; second, the only provision of the act, as it then existed, defining road districts was that contained in section 53, as follows: "The county board shall divide the county, except that portion occupied by cities and incorporated villages, into as many road districts as may be necessary, and may alter the boundaries thereof as may seem proper," etc. And although it was probably intended that each city and village should constitute a single road district and be in that regard independent of the county board, it was not in express terms so provided. Nor did the law designate the officer or board authorized to receive or disburse the moneys apportioned to such city or village out of the county road fund. Again, it will be observed that the charter of the city does not provide that all road taxes collected from property within the city shall be paid into the city treasury, and does not on its face purport to repeal existing provisions on the subject. Viewed in the light of the foregoing facts the provision under consideration would seem to contemplate such funds only as are by general law collected for the use

of the city as a road district; that its purpose was merely to provide an agency for the receipt and disbursement of such funds, and not the repeal of any part of the road law of the state. But assuming, for the purpose of this investigation, that there exists a radical conflict between the city's charter and the general road law, and that the intention of the legislature was by enacting the former to repeal the latter, it is within the prohibition of section 11, article 3, of the constitution and, therefore, void.

It is not our purpose at this time to review the cases in which construction has been given to that section of the fundamental law. We do not doubt that a provision for the receipt and disbursement of the road fund within cities of the first class is germane to the title of the act to which reference is here made as the charter of the city of Lincoln. But an attempt to thus amend an existing general law by a provision which is in effect a repeal thereof, without any reference to the prior act, presents an entirely different question, and is, without doubt, within the restriction above cited. (*Vide City of South Omaha v. Taxpayers' League*, 42 Neb., 671, and cases cited.) It follows that the order of the district court sustaining the demurrer to the petition and dismissing the proceedings is right and must accordingly be

AFFIRMED.