## IN RE CASUAL DEFICIENCY.

21    403
11a  419

21    403
f26  236

1. CONSTITUTIONAL LAW—CASUAL DEFICIENCIES OF THE REVENUE.

Upon the facts stated, it is held that at the time of the passage of the act approved April 8, 1895, there was a casual deficiency of the revenue, which, under section 3, article 11, of the constitution, conferred upon the general assembly authority to contract a loan by issuing bonds to pay the valid indebtedness of the state unpaid by reason of such deficiency.

2. SAME.

The court does not commit itself to the doctrine that in every case the courts are bound by the facts as ascertained by the legislature in reference to casual deficiencies of the revenue.

THE opinion of the court is in response to the following communication from the governor:

"TO THE HONORABLE, THE SUPREME COURT OF COLORADO:

"Whereas, the tenth general assembly passed a law entitled, 'An Act to Create Additional Bonded Indebtedness,' which act was approved April 8th, 1895, and is found on page 178 of the session laws of the state of Colorado for the year 1895, reference to said act being hereby made for a more particular statement thereof, and,

"Whereas, doubts have arisen as to the right of the legislature to create such indebtedness and whether or not an actual casual deficiency of the revenue was existing for the years 1893 and 1894, and said doubts having had the effect to hinder and prevent the negotiations of said bonds under said act,

"Now, therefore, I, Albert W. McIntire, governor of the state of Colorado, do hereby declare that the questions involved are important ones and the occasion solemn, and I hereby require the opinion of the honorable supreme court upon the following questions, based upon the following statement of facts, that is to say:

"The average increase in the assessed valuation of the state from the year 1877 to the year 1892 was nearly $13,000,000.00 per annum, as appears by the report of the state auditor for the fiscal year ending November 30th, 1892; the assessment for the year 1892 was $236,884,447.48; the estimates of the assessment for the year 1893 and 1894, based upon the average increase aforesaid, as made by the Hon. J. M. Henderson, state auditor, and upon which appropriations were based by the 9th general assembly, were as follows:

| | |
|---|---|
| Assessment for 1893, estimated, . . | $245,000,000.00 |
| Assessment for 1894, estimated, . . | 255,000,000.00 |
| Total, . . . . . . | $500,000,000.00 |

Tax of $2\frac{11}{30}$ mills on the dollar,  .    .    .  $1,183,333.36
Less 5 per cent uncollectible, .    .    .       59,166.66

      Tax collectible .    .    .    .    .  $1,124,166.70

Fees from the office of sec'y of state for 2 yrs.,
    estimated,    .    .    .    .    .    .  $140,000.00
Insurance department,    .    .    .    .      65,000.00
Interest on deposits, estimated,  .    .    .    70,000.00
Receipts from all other sources, estimated,      15,000.00

      Total,    .    .    .    .    .    .  $290.000.00
Total estimated income of revenue,    .    $1,414,166.70

"That considering the average increase in the assessed valuation from year to year as aforesaid, the said estimates were reasonable, and the said auditor was justified in making the same, and said general assembly were justified in adopting the same as the proper basis for making appropriations.

"That acting upon said assessment, the said 9th general assembly made appropriations from the general fund to the amount of $1,338,811.39, leaving an estimated surplus of revenue for said years unappropriated of $75,354.31; that the actual assessment for the state for the said year 1893 was $238,922,417.05, and for the year 1894, $208,905,227.15, making a total for the two years of $447,627,644.20, being a deficit in the amount of the assessment as estimated by the auditor in the sum of $53,372,366.80, and making a total deficiency of the revenue of the state for the said fiscal years of 1893 and 1894, as estimated aforesaid, of $126,303.49.

"That the said unexpected and unprecedented decreases in the valuation of the state was due and owing to the unforeseen and unexpected depression in business throughout the state and the nation, which resulted in a general reduction of the value of all kinds of property, and the said deficiency of the revenue was the result of said casualty.

"That the office of the secretary of state's fees during the said year amounted to $96,861.89, of the insurance department to $84,990.98, interest on deposits $55,686.84, and the

receipts from all other sources amounted to $16,459.26, making a total deficiency of $36,001.04 in the estimate as made by the auditor aforesaid, and making a total deficiency in the revenue in the sum of $162,304.53, and that the said falling off of the revenues from said sources was unexpected and was due to the casualty aforesaid; that by reason of said deficit the following amounts appropriated by the said 9th general assembly for the following purposes could not be paid, that is to say:

" For the payment of:

| | |
|---|---:|
| Scalp bounties, | $7,073.00 |
| Penitentiary female department, | 198.95 |
| Penitentiary maintenance, | 8,801.08 |
| Industrial school furnishing, | 424.15 |
| Industrial school library, | 95.39 |
| Industrial school heating, | 368.18 |
| Industrial school shops, | 1,076.76 |
| Industrial school construction, | 1,034.77 |
| Industrial school maintenance, | 10,662.79 |
| Fish hatcheries, Twin lakes, | 200.63 |
| "      "      Denver, | 187.14 |
| "      "      La Plata, | 352.50 |
| "      "      Gunnison, | 328.78 |
| Game and fish warden and deputies, | 745.47 |
| Insane asylum buildings, | 756.00 |
| Board of horticulture, | 837.45 |
| Contingent department, | 2.31 |
| Reformatory, | 5,395.70 |
| Legislative printing, | 32.58 |
| Loco weed certificates, | 6,500.00 |
| State board of health, | 2,882.96 |
| Total, | $47,956.59 |

" That all of said amounts represent actual claims against the state for necessary supplies and for labor and services rendered and furnished to the state, and certificates of indebtedness and vouchers and bills approved by the proper

officers of the state are now outstanding and unpaid for each and all of said deficiencies.

"That in addition to the foregoing bills represented by approved vouchers, there were at the time of the passage of the said casual deficiency bond act, outstanding and unpaid, certificates of indebtedness duly issued by the auditor for services rendered and expenses incurred by the several officers and persons hereinafter mentioned, as follows. That is to say :

| | | | |
|---|---|---|---:|
| 1893 May 13. | Henry L. Acker, metalliferous mine inspector, | . . . | $ 97.22 |
| " May 13. | Henry L. Acker, mileage, metalliferous mine inspector, | . | 55.40 |
| " June 3. | Henry L. Acker, mileage, metalliferous mine inspector, . | . | 291.66 |
| " June 3. | Henry L. Acker, mileage, metalliferous mine inspector, | . | 138.40 |
| " June 3. | Maurice C. Hayes, asst. metalliferous mine inspector, | . . | 66.56 |
| " June 12. | F. H. Hegwer, state boiler inspector, . | . . . | 237.50 |
| " June 16. | A. M. Johnson, stock indemnity, | | 12.50 |
| " June 16. | J. M. Downing, " " | | 130.00 |
| " July 3. | M. C. Hayes, asst. metalliferous mine inspector, | . . . | 125.00 |
| " July 5. | H. L. Acker, metalliferous mine inspector, | . . . | 291.67 |
| " July 5. | M. C. Hayes, mileage, asst. metalliferous mine inspector, | . | 120.00 |
| " July 6. | R. N. Mayfield, state board medical examiners, | . . | 49.30 |
| " July 6. | R. N. Mayfield, state board medical examiners, | . . | 49.30 |
| " July 6. | R. N. Mayfield, state board medical examiners, | . . | 49.30 |

| | | | | |
|---|---|---|---|---|
| 1893 July | 6. | F. H. Hegwer, state boiler inspector, . . . . | 208.33 |
| " July | 6. | F. H. Hegwer, state boiler inspector, mileage, . . . | 52.00 |
| " July | 6. | J. M. Hall, secy. state board medical examiners, . . . | 438.00 |
| " July | 6. | J. M. Hall, secy. state board medical examiners, . . . | 142.00 |
| " July | 6. | B. J. Perry, state board medical examiners, . . . . | 170.80 |
| " July | 6. | R. J. Balles, stock indemnity, . | 65.00 |
| " July | 27. | A. M. Bemn, member coal mine examining board, . . . | 88.70 |
| " July | 31. | James Lewis, member coal mine examining board, . . . | 66.40 |
| " July | 31. | Geo. Smith, member coal mine examining board, . . . | 158.30 |
| " July | 27. | Alex Pallock, member coal mine examining board, . . . | 89.50 |
| " Aug. | 2. | Geo. Taylor, stock indemnity, | 40.00 |
| " Aug. | 3. | A. W. Kellog, member coal mine ex. board, . . . . | 40.00 |
| " Aug. | 3. | H. L. Acker, metalliferous mine inspector, . . . . | 291.67 |
| " Aug. | 3. | H. L. Acker, metalliferous mine inspector, mileage, . . | 137.00 |
| " Aug. | 3. | J. H. Goldsworthy, asst. met. mine inspector, . . . | 116.67 |
| " Aug. | 8. | M. C. Hayes, asst. metalliferous mine inspector, . . . | 125.00 |
| " Aug. | 3. | J. H. Goldsworthy, asst. met. mine inspector, . . . . | 42.60 |
| | | Total, . . . . . . | $4,109.88 |

which said certificates of indebtedness are still outstanding and unpaid, with no provision whatever for the payment

thereof, except through and by means of the proceeds of the said casualty deficiency bonds.

"That under and by virtue of a law then in force (Mills' Statutes, sec. 4300) it became the duty of the state veterinary surgeon whenever he found stock affected with certain contageous diseases, to kill said stock and make an allowance to the owner thereof for the value of the same; that under and by virtue of said act, during the years 1893 and 1894, said state veterinary surgeon issued vouchers therefor in the sum of $410.00, which vouchers were outstanding and unpaid at the time of the passage of the said casual deficiency bond act and are still unpaid.

"That during the years 1893 and 1894 Henry L. Acker was the duly appointed and acting inspector of metalliferous mines of the state of Colorado, and J. H. Goldsworthy and Maurice C. Hayes were deputy inspectors of metalliferous mines, and each performed services for the state as such officers, their aggregate salaries and expenses amounting to $9,708.34, no part of which was paid, no appropriation having been made therefor by the said 9th general assembly, and approved vouchers were issued therefor and are now outstanding against the state to the amount of $5,501.21.

"That the 10th general assembly passed a law appropriating the sum of $9,708.34 to pay for said services; that the said sum of $5,501.21 was to be paid out of the fund arising from the sale of the said casual deficiency bonds, and the balance thereof, being for services performed during the fiscal year 1895, to be paid out of the general revenue of said year.

"That the said 9th general assembly made an appropriation in the general appropriation bill as follows:

"'For rent of the executive and judicial departments, including heat and water, and to pay the deficiency for rent of these departments of state and for the years 1893 and 1894 the sum of $22,330.00.'

"That at the time said appropriation was made it was supposed that the state capitol building would be ready for occupancy within about one year from the time of said ap-

propriation and that it would be necessary to pay rent for the executive and judicial departments for that length of time only, and said appropriation was made to cover the rental of rooms for said departments for that period of time only ; that the board of capitol managers were unable to complete said capitol building at the time appropriated and failed so to do, and for that reason and because of said failure it became and was necessary to rent rooms for the use of said departments until on or about the 1st day of December, A. D. 1894, and the said sum so appropriated was not sufficient to pay the said necessary rentals and an indebtedness was incurred in the sum of $19,906.03 on account of the rent of the rooms for the use of the said departments, for which vouchers duly approved by the secretary of state were outstanding against the state at the time of the passage of the said casual deficiency bond act, and the same are still outstanding and unpaid.

" That the 9th general assembly made another appropriation in the general appropriation bill as follows :

" ' For the printing required by the 9th general assembly for the years 1893 and 1894, and the deficiency for the years 1891 and 1892, except any amount that may be due the firm of Collier and Cleaveland, for which no appropriation is made herein : viz.—house and senate bills, calendars, letter heads, envelopes, materials, committee reports, roll calls, blanks for reports, rules, contested election briefs, bill covers, engrossing blanks, the session laws of the 9th general assembly in English and Spanish, reports of state officers, departments and state institutions, message and inaugural of the governor, publishing the amendments of the constitution, the house and senate journals for 1893, the printing of acts or parts of acts, and any printing required by law or ordered by either branch of the general assembly, the sum of $33,000.'

" That the total expenditure for the necessary printing of the said general assembly, other than the publication of the constitutional amendments in accordance with the act of the said general assembly was, to wit, $25,637.60, and vouchers

for the same duly approved by the secretary of state were outstanding at the time of the passage of the said casual deficiency bond act, and unpaid against the state, and the same are still outstanding and unpaid.

" That the said 9th general assembly made another appropriation in the general appropriation bill as follows:

" ' For the incidental expenses of the executive and judicial departments for the years of 1893 and 1894 and for the deficiencies of the years 1891 and 1892, viz.—janitor hire, gas, brooms, dusters, soap, matches, washing towels, ice, carpets, mattings, shades, gas fixtures, plumbing, calcimining, repairing, carpenter's work, refitting labor, drayage, expressage, messengers, furniture for all state officers, postage for all departments, post office box rent, rent of telephones, seals and rubber stamps, city and state directories, maps, instruments for the state engineer, insurance on furniture and libraries, stationery for all departments, and any other articles that will facilitate the business of any department, for the year 1893 and 1894 and for the deficiencies of the years 1891 and 1892, the sum of $27,000.00.'

" That the ordinary incidental expenses of the said departments for the said two years amounted to the sum of $26,997.69; that by reason of the fact that the executive and judicial departments of the government were required to move from the quarters where they were situated at the time of the passage of said appropriation to a building known as the Equitable building and again were required to move from the said Equitable building to the state capitol building, and by reason of other unforeseen and unexpected contingencies arising during the said two years it became necessary to expend in addition to the amount so appropriated the sum of $4,847.96, and that at the time of the passage of the said casual deficiency bond act vouchers representing said sum, duly approved by the secretary of state, were outstanding, and unpaid, against the state, and the same are still outstanding and unpaid; that by reason of the fact that the entire revenue had been expended before the removal

from said Equitable building to the said capitol building it would have been impossible for the state government to make such move without incurring said additional expense.

" That the said 9th general assembly appropriated the sum of $170,000.00 for the maintenance of the state penitentiary for the years 1893 and 1894; that owing to an unforeseen increase in the number of convicts committed to said institution by the courts, and other unforeseen casualties, the cost of maintaining said institution for the said fiscal years was $3,697.39 in excess of the said appropriation, for which amount, in addition to the said $8,801.03 hereinbefore mentioned, supplies, goods and materials were actually and in good faith furnished to the state and services were actually and in good faith rendered to the state and for which vouchers duly approved by the proper officers of the state were at the time of the passage of the said casual deficiency bond act and still are outstanding and unpaid.

" That the said 9th general assembly made an appropriation for the support of the Soldiers' and Sailors' Home for the fiscal years of 1893 and 1894 in the sum of $40,000.00; that owing to an unexpected and unforeseen increase in the number of beneficiaries of said institution the cost of maintenance thereof for the two fiscal years was $5,352.45 in excess of said appropriation, for which amount supplies, goods and materials were actually and in good faith furnished to the state and services were in good faith performed for the state and for which vouchers, duly approved by the proper officers, at the time of the passage of the casual deficiency bond act were, and are still are, outstanding and unpaid, because of the said casual deficiency of the revenue of the years 1893 and 1894. That the total amount of said outstanding indebtedness, unprovided for from any other source than the proceeds of the said casual deficiency bonds as hereinbefore set forth, together with other claims of a similar character, not herein set forth, amounts to $131,000.00 in round numbers, so far as known at the present time, of which claims those amounting to the sum of fully $100,000.00 are

undoubtedly just and the same are unpaid by reason of the deficiency of the revenue aforesaid and for no other reason.

"QUESTION:

" Upon the facts as hereinbefore stated, was there, at the time of the passage of the act referred to, a casual deficiency of the revenue existing which authorized the general assembly, under the provisions of section 3 of article 11 of the constitution, to contract an indebtedness by the issuing of bonds for the purpose of paying said outstanding indebtedness, as provided in said act?

" Respectfully submitted,<br>
" ALBERT W. McINTIRE,<br>
" Governor."

The questions propounded by the foregoing communication were discussed by BYRON L. CARR, Attorney General, Mr. WILLIAM B. FELKER and Mr. DANIEL E. PARKS, *amici curiæ.*

PER CURIAM.    We are advised that it is important to the credit of the state, if this court affirmatively answer the foregoing interrogatory, that $50,000 of the bonds provided for in the act in question be issued and sold within the present fiscal year.    As there are left but seven days of this period for the carrying out of such object, it is necessary that the answer to such interrogatory be promptly given.

With this necessity before us, we have devoted the short time since the argument upon the hearing to a careful consideration of the legal proposition involved, and now content ourselves with stating merely the conclusions reached, rather than the reasons for such determination.

It is asserted by counsel who argued against the existence of a casual deficiency upon the facts stated that this court, in *In re Appropriations*, 13 Colo. 316, has virtually decided against the contention of the attorney general, who argues that the contingency existed which empowered the legislature

under the constitution to issue these bonds. Without in the least limiting the scope and effect of the doctrine announced by this court in the case referred to,—which we would unhesitatingly affirm did we conceive that the same or similar questions were again before us,—we say that upon the facts as stated in the foregoing communication there was, at the time of the passage of the act in question, a casual deficiency of the revenue, the happening of which conferred upon the general assembly the authority to contract a loan by issuing bonds to pay the valid indebtedness of the state unpaid by reason of such deficiency.

As bearing more or less directly upon this question, see *Hovey, Governor, et al. v. Foster,* 118 Ind. 502; *Lusher v. Scites et al.,* 4 W. Va. 11; *Cass Tp. v. Dillon,* 16 Ohio St. 38; *State v. Noyes,* 47 Me. 189; Cooley's Const. Lim. (5th ed.), 153 *et seq.*

The reference to these authorities is not intended to commit this court to the doctrine that in every case are the courts bound by the facts as ascertained by the legislature; but it is apparent that the legislative declaration that the contingency had arisen which justified the enactment of the law in question was sustained by the facts before it.