[No. 4037.]

## In re House Bill No. 250 to Create a State Board of Assessors.

1. Practice—Questions from Governor or General Assembly.

In *ex parte* proceedings on questions from the governor or either house of the general assembly the court will not inquire into or determine for itself disputed questions of fact. For the purposes of the opinion, and for those only, the facts as recited or as assumed by the governor or house asking the question may be taken as true, but are not binding upon the parties in any subsequent litigation, or upon the court in other proceedings, and not necessarily in the *ex parte* proceedings.

2. Constitutional Law—Printing Amendments to Bills—Mandatory Provisions.

Section 22, article 5, of the constitution requiring all substantial amendments to a bill to be printed for the use of members of the general assembly before final vote is taken on the bill is mandatory on the legislature.

3. Same.

The house passed a bill to create a state board of assessors to consist of all the county assessors of the state. The senate amended the bill, dividing the counties into five classes and providing that all the assessors should choose from their number one assessor from each class who, with certain state officers who compose the state board of equalization, should constitute the state board of assessors. *Held*, that the amendment was a substantial one within the meaning of section 22, article 5, of the constitution requiring all substantial amendments to be printed before final vote on the bill.

4. Same—Judicial Question.

Whether or not an amendment to a bill is a substantial one, within the meaning of section 22, article 5, of the constitution, such as is required to be printed before final vote on the bill, is a judicial question to be determined by the courts, and not a legislative one to be determined by the legislature.

*Original Proceeding.*

*Question from the Governor.*

Mr. CHAS. G. CLEMENT, Mr. L. F. TWITCHELL, Attorney General DAVID M. CAMPBELL, Mr. CALVIN E. REED, Mr. TYSON S. DINES and Messrs. ROGERS, CUTHBERT & ELLIS, *amici curiæ.*

PER CURIAM. The twelfth general assembly passed, and sent to the governor for his approval, House Bill No. 250, entitled, " An act to provide for the better assessment of property for revenue, to create a state board of assessors,"etc. Entertaining grave doubt of its constitutionality, the governor has transmitted a communication requesting our opinion, stating, *inter alia,* that, to his mind, the question is " *publici juris,* and one which imperatively demands judicial determination prior to the approval of the act." Coinciding with the conclusion of the chief executive that the question is important and the occasion solemn, it becomes our duty to make answer.

Embodied in the communication is a statement from which it appears that the bill, as originally introduced, and as it passed the house of representatives, provided for the creation of a state board of assessors to consist of all the assessors of all the counties of the state, on which should devolve the powers and duties therein specified. When it reached the senate it was amended by providing that the several counties in the state shall be divided into five classes, according to the classification existing for the purpose of fixing the fees to be collected by county officers. The amendment further provided that all the county assessors of the state shall meet at Denver at 10 o'clock A. M. on the first Monday of April of each and every year for the purpose of selecting from their number five assessors, to be chosen by them, one from each of said classes. And these five assessors, so chosen, together with the governor, secretary of state, auditor, treasurer and attorney general, shall constitute the state board of assessors.

The specific provisions of the constitution supposed to be violated in the passage of this act are section 22 of article 5, and section 15 of article 10.   The former reads as follows :

" Every bill shall be read by title when introduced, and at length on two different days in each house ; all substantial amendments made thereto, shall be printed for the use of the members before the final vote is taken on the bill, and no bill shall become a law except by a vote of a majority of all the members elected to each house, nor unless on its final passage, the vote be taken by ayes and noes, and the name of those voting be entered on the journal."

The latter, *inter alia*, creates a state board of equalization, consisting of the state officers above mentioned, whose duty shall be to adjust and equalize the valuation of real and personal property among the several counties of the state, and to perform such other duties as may be prescribed by law.

Although the governor does not declare it to be a fact established beyond doubt that the amendment offered in the senate was not printed before the bill was put on its final passage, yet he does state that he is sufficiently convinced of its correctness to assume that fact for the present.   It is well here to refer to our previous decisions declaring that in these *ex parte* proceedings the court will not inquire into, or determine for itself, disputed questions of fact.   For the purposes of the opinion, and for those only, the facts, as recited, or as assumed, by the governor, or either house of the general assembly, may be taken as true, but are not binding upon the parties to any subsequent litigation, or upon the court itself in other proceedings, or necessarily in these *ex parte* proceedings.   *In re Casual Deficiency*, 21 Colo. 403 ; *In re Appropriations*, 13 Colo. 316, 322 ; *People ex rel. v. Martin*, 19 Colo. 565, 570 ; *In re Fire, etc., Comrs.*, 19 Colo. 482.

Assuming, therefore, with the governor, as the established practice permits us to do, and for the present purpose only, that the amendment to this bill was not printed, we proceed to consider the questions submitted.

*First*, is the act, as now enrolled, in that the senate amend-

ment was not printed for the use of the members before the final vote was taken on the bill, in conflict with section 22 of article 5 of the constitution ?   *Second,* is the act, in so far as it devolves upon the state board of assessors therein created the duty of assessing the class of property therein described, in conflict with section 15 of article 10 of the constitution, which establishes a state board of equalization and prescribes its duties ?   Our conclusion upon the first proposition renders unnecessary a determination of the second.

The question upon which our opinion is given may thus be subdivided:  (1) Is the section of the constitution mandatory?  (2) Is the amendment a substantial one, in the sense of the term as employed therein ?  (3) Is it for the general assembly or the courts to determine whether or not a given amendment to a bill is a substantial one?

1. No case has been called to our attention in which this particular clause has been construed.   In constitutions of other states, provisions like our section 22 of article 5 are found. The other clauses thereof, also like ours, have frequently been before the courts, and almost invariably have been declared mandatory upon the legislature.   The language is that every bill *shall* be read by title and at length on two different days, and that all substantial amendments made thereto *shall* be printed, etc.   These other clauses having, in our opinion, been rightly held to be mandatory, we think, without question, and for similar reasons, the one now under consideration is equally so.   Indeed, none of the able counsel who have appeared *amici curiæ* and given us the benefit of their argument, have claimed that the section, or any part of it, is directory, but all concede that each of the requirements was designed to be, and is, mandatory upon the general assembly. A few authorities in support of this conclusion may be referred to: Sutherland on Stat. Constr. §§ 29, 30, 41, 50, 66, 76; Cooley's Const. Lim. (6th ed. ) pp. 93, 94, 170 ; *State v. Cobb,* 44 Neb. 434; *Omaha v. Taxpayers League,* 42 Neb. 671 ; *Ryan v. Lynch,* 68 Ill. 160 ; *Buritt v. Commrs.,* 120 Ill. 322, 326 ; *M. M. Life Ins. Co. v. Colo. Land & Trust Co.,* 20 Colo. 1.

2. It scarcely requires argument to demonstrate that to the bill, as it passed the house, the amendment introduced and passed in the senate is most substantial and material in its effect. As the bill passed the house and came before the senate, the state board of assessors therein created consisted of the county assessors of all the counties of the state; as amended in the upper branch, the several counties of the state were divided into five classes, and from each one of these classes one county assessor was to be selected by the entire body of assessors of the state, and the five assessors so chosen, and five of the state officers, who, under the constitution, constitute the state board of equalization, are to be the state board of assessors. We are quite clear that the amendment was substantial.

3. The object of this requirement that every substantial amendment to a bill shall be printed for the use of the members before final vote is taken is to prevent, so far as possible, fraud and trickery and deceit and subterfuge in the enactment of bills, and to prevent hasty and ill-considered legislation. The printing of such amendments directly brings to the attention of members their character and effect. Thereby, in the judgment of the framers of such constitutional safeguard, the dangers anticipated are greatly lessened, if not altogether avoided. One of the learned counsel who entertains some doubt of the authority, or propriety, of the judiciary to decide the question as to the character of an amendment, upon oral argument conceded that where, by failure to print an amendment to a bill, some fraud or trickery or deceit has been practiced upon the members, who thereby have been cajoled or deceived into supporting some measure which, had they known its real character, they would have opposed; or if it was made to appear in a litigated case that the failure to print manifestly occasioned the passing of the bill through the general assembly contrary to the real intent of that body, the courts might investigate and determine whether the amendment was so substantial as that it should be printed, and, if it was, to set aside the enactment.

When this concession is made, it seems to us that it would follow that there exists the same right of the courts to determine the question when hasty and ill-considered legislation results, or may result, from the failure to print a given amendment. But the real question is not whether, as a matter of fact, fraud, or deceit, has been practiced, or hasty or inconsiderate legislation been passed; but it is whether the amendment which was not printed, as the constitution requires, is, in law, deemed by the court to be substantial. If so, a bill that goes through the general assembly, carrying such an amendment, is not constitutionally passed, and the mandate of the constitution makes it nugatory, even though, in a particular case, the court might see that the evil consequences sought to be prevented had not ensued. Hence, it may not be enforced, even though the members of the legislature dispensed with the printing upon a mistaken supposition that the amendment was not substantial. If either house of the general assembly may, for itself, conclusively determine whether or not any amendment is a substantial one, then all the benefits of this clause would be lost, and its effect altogether frittered away; for the mere neglect or refusal of that body to have any amendment printed would be equivalent to its determination that the amendment was not substantial; and if that decision was final, then, by a majority vote, the most substantial amendment that can be conceived of might be engrafted upon a bill, and the members not have the benefit of a printed copy before them before finally voting on the bill itself.

The case nearest in point that we have been able to find is that already cited upon another proposition, in 20 Colo. 1. The precise question here was not then before the court, but the act there considered was claimed to be in violation of section 22 of article 5 of the constitution. One of the points sought to be made was that the amendment not having been printed, the act was void; but the court disposed of the contention by saying that it did not make a substantial, or any, change in the effect of the act, and "consequently is not

such an amendment as the constitution requires to be print-
ed." That decision, in its logical effect, is authority for the
proposition that the question as to whether or not an amend-
ment is a substantial one is judicial, and not legislative; for,
if it was a legislative question, the court would probably have
put its decision upon that ground, and not upon the ground
that the amendment was not, in the opinion of the court, a
substantial one. Impliedly, also, the effect of this decision
is that if the amendment had been a substantial one, the con-
stitution requiring that it should be printed before the vote
upon the bill was taken, the act, as so amended, would have
been void, had not such amendment been printed before
such vote was had.

If, therefore, it be a fact, as assumed by the governor, that
the senate amendment in question was not printed for the
use of its members before the final vote was taken on the
bill, the enrolled act, as submitted to us, contravenes that
clause of section 22 of article 5 of the constitution relating
thereto.