504 P.3d 316
2021 COA 137
ROCKY MOUNTAIN GUN OWNERS, a Colorado nonprofit corporation; Representative Patrick Neville; Representative Lori Saine, House Minority Leader; and Representative Dave Williams, Plaintiffs-Appellants and Cross-Appellees,
v.
Jared S. POLIS, in his official capacity as Governor of the State of Colorado, Defendant-Appellee and Cross-Appellant.
Court of Appeals No. 20CA0997
Colorado Court of Appeals, Division IV.
Announced November 10, 2021
Arrington Law Office, Barry K. Arrington, Denver, Colorado, for Plaintiffs-Appellants and Cross-Appellees
Philip J. Weiser, Attorney General, Eric R. Olson, Solicitor General, Grant T. Sullivan, Assistant Solicitor General, Denver, Colorado, for Defendant-Appellee and Cross-Appellant
Opinion by JUDGE J. JONES
¶ 1 Rocky Mountain Gun Owners (RMGO) and three members of the Colorado House of Representatives challenge the enactment of House Bill 19-1177, a so-called "Red Flag law," now codified at sections 13-14.5-101 to - 114, C.R.S. 2021. The most well-known aspect of that law is the provision allowing a court to issue a "temporary extreme risk protection order" requiring a person to surrender all firearms, or allowing law enforcement personnel to take the person's firearms, if the court finds, by a preponderance of the evidence, that the person "poses a significant risk of causing personal injury to self or others in the near future" by virtue of purchasing, possessing, or receiving a firearm or having a firearm in his or her custody or control. §§ 13-14.5-103(3), -108.
¶ 2 RMGO and Representatives Patrick Neville (the House Minority Leader), Lori Saine, and Dave Williams filed suit alleging that the House violated article V, section 22 of the Colorado Constitution, commonly referred to as the "Reading Clause," by failing to read the full text of House Bill 19-1177 after Representatives Saine and Williams separately requested such a reading.
¶ 3 The district court granted the Governor's motion to dismiss the complaint. The court ruled that the plaintiffs’ challenge under the Reading Clause presents a nonjusticiable political question, meaning that the court lacked subject matter jurisdiction. That ruling was sufficient to justify dismissal of the complaint, but the court went on to hold that (1) none of the plaintiffs have taxpayer or "individual" standing but (2) Representatives Saine and Williams have "legislative standing."[1] ¶ 4 The plaintiffs appeal the dismissal of their complaint. The Governor cross-appeals the district court's ruling that Representatives Saine and Williams have standing.
¶ 5 We hold, largely on the basis of the Colorado Supreme Court's recent decision in Markwell v. Cooke , 2021 CO 17, 482 P.3d 422, that the plaintiffs’ challenge to the Red Flag law under the Reading Clause doesn't present a nonjusticiable political question. We also hold that while none of the plaintiffs have taxpayer standing, Representatives Saine and Williams have standing because they have sufficiently alleged an injury in fact to a legally protected interest. We therefore affirm the judgment in part, reverse it in part, and remand the case to the district court for further proceedings.
504 P.3d 318 I. Background ¶ 6 The Governor moved for dismissal under both C.R.C.P. 12(b)(1) and (b)(5). But even though a motion under Rule 12(b)(1) differs from one under Rule 12(b)(5) in that a court may consider evidence outside the complaint in ruling on the motion, need not accept the allegations in the plaintiff's complaint as true, and may make factual findings in ruling on the motion, Medina v. State , 35 P.3d 443, 452 (Colo. 2001), none of the parties submitted any evidence in support of their respective positions. Rather, the Governor treated the plaintiffs’ factual allegations as true, as did the district court. Therefore, we will as well.
¶ 7 House Bill 19-1177 was introduced in the House on February 14, 2019. On March 1, 2019, while the House was considering the bill on second reading, Representative Williams requested that bill be read in full. The Chair of the Committee of the Whole denied his request. Representative Saine also requested that the bill be read in full while it was being considered on second reading. The Chair said her request "will not be considered." The bill was never read in full in the House.
¶ 8 The General Assembly passed the bill on April 1, 2019, and the Governor signed it into law on April 12, 2019.
¶ 9 The plaintiffs filed their complaint on May 2, 2019. As noted, they challenge the Red Flag law under the Reading Clause of the Colorado Constitution. The Reading Clause provides as follows:
Every bill shall be read by title when introduced, and at length on two different days in each house; provided, however, any reading at length may be dispensed with upon unanimous consent of the members present . All substantial amendments made thereto shall be printed for the use of the members before the final vote is taken on the bill, and no bill shall become a law except by a vote of the majority of all members elected to each house taken on two separate days in each house, nor unless upon its final passage the vote be taken by ayes and noes and the names of those voting be entered on the journal. Colo. Const. art. V, § 22 (emphasis added).
¶ 10 The plaintiffs also allege that the House violated House Rule 27(b), which says,
Every bill shall be read by title when introduced, which shall constitute first reading, and at length on two different days prior to its being finally passed. Reading before the House sitting as committee of the whole shall constitute second reading. Unless a member shall request the reading of a bill in full when it is being considered on second or on third reading , it shall be read by title only, and the unanimous consent of the members present to dispense with the reading of the bill at length shall be presumed.
(Emphasis added.) The plaintiffs allege that Representatives Saine and Williams requested that the bill be read in full "when it [was] being considered on second ... reading."
II. Analysis
¶ 11 We first consider whether the plaintiffs’ challenge to the Red Flag law under article V, section 22 raises a nonjusticiable political question. After concluding that it does not, we turn to the issue of standing. As there are, at this juncture, no disputed facts (and no findings of fact), and the issues present questions of law, we review the district court's judgment de novo. Markwell , ¶ 20 (interpretation of the Reading Clause is a legal issue subject to de novo review); Barber v. Ritter , 196 P.3d 238, 245 (Colo. 2008) ("Whether a plaintiff has standing to sue is a question of law that we review de novo."); see Schroder v. Bush , 263 F.3d 1169, 1173 (10th Cir. 2001) (the application of the political question doctrine is a legal question that the appellate court reviews de novo).
A. Political Question ¶ 12 The district court's ruling that the plaintiffs’ Reading Clause challenge to the Red Flag law presents a nonjusticiable political question cannot stand in light of the supreme court's subsequent decision in Markwell . In that case, three state senators challenged the passage of a bill under the Reading Clause. After one of those senators 504 P.3d 319 asked that the bill be read at length, Senate staff uploaded the bill to several computers and those computers read different portions of the bill simultaneously at high speed. Several senators objected to that procedure, to no avail. The computers "churn[ed] out unintelligible sounds" for four hours. Markwell , ¶¶ 6-8.
¶ 13 The three senators sought and obtained temporary and preliminary injunctions in district court. In granting those injunctions, the district court rejected the responding Senate officers’ argument that the senators’ Reading Clause challenge presented a nonjusticiable political question. On C.A.R. 50 review, the supreme court affirmed. Though the court split four to three on the question whether the Reading Clause had been violated (with the majority deciding that it had), all seven justices agreed that the Reading Clause challenge didn't present a nonjusticiable political question. Id. at ¶¶ 23-31 (majority opinion); id. at ¶ 51 (Márquez, J., dissenting); id. at ¶ 75 (Hood, J., dissenting). The majority reasoned that "the issue of whether the legislature complied with the reading requirement ... requires constitutional interpretation and is thus a prime candidate for judicial resolution," id. at ¶ 23, relying on a number of the supreme court's past decisions, including Colorado Common Cause v. Bledsoe , 810 P.2d 201 (Colo. 1991) (involving a challenge under the GAVEL amendment, Colo. Const. art. V, § 22a ), and In re House Bill No. 250 , 26 Colo. 234, 57 P. 49 (1899) (involving a challenge under the printing requirement of article V, section 22 ). See also Mass. Mut. Life Ins. Co. v. Colo. Loan & Tr. Co. , 20 Colo. 1, 4-5, 36 P. 793, 794 (1894) (addressing the merits of an article V, section 22 reading requirement claim); Grossman v. Dean , 80 P.3d 952, 961 (Colo. App. 2003) (holding that a challenge under the GAVEL amendment didn't present a nonjusticiable political question; the challenge called for the court "to interpret a constitutional amendment and to determine whether the application of the House Rule violates that amendment").
¶ 14 We see little daylight between the challenge under the Reading Clause in Markwell and the challenge under the Reading Clause in this case. True, the challenge in Markwell was that the bill had not been read within the meaning of article V, section 22, while the challenge in this case is whether the House members unanimously agreed to dispense with the reading requirement. But the unanimity requirement of article V, section 22 is directly, and explicitly, in aid of the reading requirement. It gives each member of the General Assembly the right to insist that a bill be read at length twice. In this way, the unanimity requirement advances the purposes of the reading requirement, which are "to prevent, so far as possible, fraud and trickery and deceit and subterfuge in the enactment of bills, and to prevent hasty and ill-considered legislation." In re House Bill No. 250 , 26 Colo. at 238, 57 P. at 50, quoted with approval in Markwell , ¶ 28 ; see also Markwell , ¶ 28 ("[T]he reading requirement ... was aimed at ensuring the integrity of the enactment of bills."). Thus, we conclude that the unanimity requirement is of a piece with the reading requirement, and therefore we don't see how we can distinguish Markwell on this issue in any principled way.
¶ 15 In arguing for a contrary conclusion, the Governor relies most heavily on features of political questions articulated in Baker v. Carr , 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). But in Markwell , decided after the briefing in this case, the majority questioned the utility of the features identified in Baker , resting as they do on considerations unique to federal courts under Article III of the United States Constitution. The majority noted that those considerations "cannot be mechanically applied here because Colorado district courts, unlike their federal counterparts, are courts of general jurisdiction." Markwell , ¶¶ 24-25.[2] The majority declined to 504 P.3d 320 consider those features one by one, instead simply observing that, mindful of differences between federal and state judicial authority, it had found justiciable at least one question similar to the Reading Clause challenge before it. Id. at ¶¶ 25-26 (referring to Bledsoe ). The dissenting justices had even less use for Baker , saying that "the majority misses an opportunity to clean up the law by admitting that, despite our professed (but at best inconsistent) fealty to Baker , it does not dictate the justiciability of political questions under Colorado law." Id. at ¶¶ 73-79 (Hood, J., dissenting).[3] ¶ 16 We therefore decline to address the Baker considerations individually. Suffice it to say, we don't see any of those considerations as militating against judicial determination of the House's compliance with the unanimity requirement of article V, section 22.
¶ 17 The Governor also argues that the unanimity requirement is different from the reading requirement in that the unanimity requirement is addressed by a House Rule (Rule 27(b) quoted above); article V, section 12 of the Colorado Constitution gives the General Assembly the power to determine the rules of its proceedings; and the courts may not inquire whether the House complied with its own rules. The district court agreed with this argument.[4] We don't.
¶ 18 As discussed, the unanimity requirement is tied to the reading requirement. Contrary to the Governor's assertion, there are not "multiple ways" that the unanimity requirement can be complied with, thus taking compliance with that requirement out of the judiciary's reach.[5] Unanimity in this context requires that every member of the House (and the Senate) consent to dispense with the reading requirement of a bill; any member can insist that a bill be read in full. True, any such request must be timely. But in this case, according to the complaint, Representatives Saine and Williams requested that the bill be read in full while that bill was being considered on second reading, consistent with House Rule 27(b).
¶ 19 And in any event, though the legislature may, by rule, impose reasonable procedural requirements on a legislator's exercise of constitutional rights relating to the legislative process, it may not by rule, or by interpretation or application of a rule, essentially nullify a constitutional requirement. We think it telling that in this case, the Governor did not submit any evidence — whether House Rule or affidavit — attempting to justify the Chair's refusal on the basis of any House Rule or existing parliamentary procedure. His argument seems to be that once the Chair denies any request to read the bill in full, that decision is unreviewable for reasons that need not be explained. But accepting that position would, as a practical matter, render the Reading Clause a dead letter.
¶ 20 In In re House Bill No. 250 , the supreme court rejected an argument similar to that now advanced by the Governor. In that case, the Governor asked the supreme court to determine whether the General Assembly had complied with the requirement of article V, section 22 that any "substantial amendments" to a bill be printed for members 504 P.3d 321 before a final vote is taken. The court rejected the argument that it was solely for the legislature to determine whether an amendment was substantial: "If either house of the general assembly may for itself conclusively determine whether or not any amendment is a substantial one, then all the benefits of this clause would be lost, and its effect altogether frittered away ...." 26 Colo. at 239, 57 P. at 50 ; see also Bevin v. Commonwealth ex rel. Beshear , 563 S.W.3d 74, 82 (Ky. 2018) ("To allow the General Assembly ... to decide whether its actions are constitutional is literally unthinkable." (quoting Rose v. Council for Better Educ., Inc. , 790 S.W.2d 186, 190 (Ky. 1989) )).[6] ¶ 21 We therefore reject the Governor's argument that this case, unlike Markwell , implicates unreviewable House rules or "parliamentary procedures."
¶ 22 The Governor also argues that the plaintiffs’ challenge is barred because the plaintiffs-legislators didn't "exhaust legislative remedies."[7] But the Governor doesn't cite any authority supporting this novel argument. The cases cited by the Attorney General involved exhaustion of administrative remedies; they didn't involve the General Assembly's compliance with the constitution.
¶ 23 The sole exception is Melcher v. Federal Open Market Committee , 836 F.2d 561 (D.C. Cir. 1987), in which the court rebuffed a Senator's challenge to the method of appointing certain members of a federal committee under the Appointments Clause of Article II, Section 2 of the United States Constitution. The court held that the "doctrine of equitable discretion" barred the suit because the Senator could "obtain substantial relief from his fellow legislators through the legislative process itself." Id. at 563-65. But the Governor doesn't point to any means by which the legislators in this case could have obtained "substantial relief" from their fellow legislators through the legislative process.[8] More importantly, the "equitable discretion" doctrine on which Melcher relied appears to be one applied in this manner only by the District of Columbia Circuit, and even then, inconsistently. See Schaffer v. Clinton , 54 F. Supp. 2d 1014, 1018 (D. Colo. 1999) (rejecting such an application of the doctrine as "an aberrant use of the concept of discretion"), aff'd on other grounds , 240 F.3d 878 (10th Cir. 2001).
¶ 24 And we don't see how the notion of requiring exhaustion of legislative remedies in this context can be squared with the court's holding in Markwell that compliance with the Reading Clause is "a prime candidate for judicial resolution," Markwell , ¶ 23, or with Colorado principles of standing.
¶ 25 We therefore decline to impose a requirement on legislators that they first appeal to their fellow legislators before seeking redress for an alleged constitutional violation in court.
In sum, we conclude that the plaintiffs’ challenge to the Red Flag law under article V, section 22 doesn't present a nonjusticiable political question.
B. Standing
¶ 26 All four of the plaintiffs claim taxpayer standing. Representatives Saine and Williams claim to have standing as individuals or legislators. We address these claims in turn.
1. Taxpayer Standing ¶ 27 The plaintiffs contend that they have taxpayer standing because they are taxpayers and taxpayer funds will be expended to enforce the Red Flag law.[9] We conclude, 504 P.3d 322 however, that the expenditure of taxpayer funds is too attenuated from the injury at issue to confer taxpayer standing on any of the plaintiffs. ¶ 28 To establish standing under Colorado law, a plaintiff must show both (1) that he or she suffered an injury in fact and (2) that the injury was to a legally protected interest. Reeves-Toney v. Sch. Dist. No. 1 , 2019 CO 40, ¶ 22, 442 P.3d 81 ; Barber , 196 P.3d at 245. "[T]he standing requirement distinguishes ‘those particularly injured by ... government action,’ who may present their controversy for resolution by the courts, from members of the general public, whose interests are more remote and who ‘must address their grievances against the government through the political process.’ " Reeves-Toney , ¶ 22 (quoting Barber , 196 P.3d at 255 (Eid, J., concurring in the judgment)). ¶ 29 Colorado recognizes a form of taxpayer standing that is "relatively broad." Id. at ¶ 23. But "to meet the injury-in-fact requirement, a plaintiff relying on her status as a taxpayer to confer standing must demonstrate ‘a clear nexus between h[er] status as a taxpayer and the challenged government action.’ " Id. (quoting Hickenlooper v. Freedom from Religion Found., Inc. , 2014 CO 77, ¶ 12, 338 P.3d 1002 ).
¶ 30 The plaintiffs don't allege any such clear nexus in this case. The injury of which they complain is the House's failure to comply with the reading and unanimity requirements of the Reading Clause. And, at oral argument, counsel for the plaintiffs conceded that there was no expenditure or transfer of taxpayer funds as a result of that failure to comply. They allege only that taxpayer funds will be expended to enforce the Red Flag law. Any such expenditure is too attenuated from the alleged constitutional violation resulting from the failure to read the bill in full to confer standing on any of the plaintiffs.[10] ¶ 31 We therefore conclude that none of the plaintiffs has taxpayer standing.
2. Individual Standing ¶ 32 Relying on Grossman , the district court ruled that Representatives Saine and Williams have "legislative standing" to challenge the manner of enactment of the Red Flag law. Seizing on the court's use of the word "legislative," the Governor contends that the court erred because Colorado doesn't recognize the concept of "legislative standing" and these Representatives have not alleged any injury in fact. We conclude, however, that Representatives Saine and Williams have standing under generally applicable standing principles.
¶ 33 As discussed, the Reading Clause requires reading of a bill in full unless the members of the chamber unanimously agree to dispense with that requirement. "Unanimous" isn't an ambiguous term. It means "having the agreement and consent of all without dissent." Webster's Third New International Dictionary 2482 (2002). So the Reading Clause gives each member of the General Assembly the right to insist on the reading of a bill in full. Put another way, the right granted is personal to individual members. It follows that both Representative Saine and Representative Williams had a legally protected interest in having the bill read in full at their request. Indeed, the Governor doesn't even argue on appeal that they lacked such an interest.
¶ 34 As for suffering an injury in fact to that interest, they suffered such an injury when their requests were denied. They were deprived of their personal right to have the bill read at length before it was voted on, and the bill was not read in full.
¶ 35 The Governor argues, however, that the Representatives didn't suffer an injury in fact because they don't "allege that they failed to receive notice of the bill's contents or that reading of the bill would have led to a substantive change to its provisions." But that argument fails to acknowledge the mandatory nature of the Reading Clause. See In re House Bill No. 250 , 26 Colo. at 237, 57 P. at 50. And it ignores at least one purpose of 504 P.3d 323 the provision — "to prevent hasty and ill-considered legislation." Id. at 238, 57 P. at 50.
¶ 36 As well, the Governor's position is inconsistent with Grossman . In that case, a bill's sponsor challenged the use of a "supermotion" under House Rule 25(j)(1)(G) to kill his bill. He claimed that use of the rule violated the GAVEL amendment, section 20 of article V of the Colorado Constitution, because it denied him his right thereunder to have his bill considered and voted on by a committee of reference. 80 P.3d at 958. The division held that the GAVEL amendment gave such a right to "each legislator," and that the denial of that right caused the sponsor to suffer an injury in fact to that interest. Id. Notably absent from the division's analysis was any mention of any allegation by the sponsor that his bill would have been enacted if it had been considered and voted on in committee. The division simply deemed the denial of the procedural right sufficient to confer standing.[11] ¶ 37 Spokeo, Inc. v. Robins , 578 U.S. 330, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016), on which the Governor relies, doesn't require a contrary conclusion. In that case, the Court held that a "bare procedural violation" of the Fair Credit Reporting Act would not be sufficiently "concrete" to confer standing on the plaintiff. Id. at 339-43, 136 S.Ct. 1540. But that case was decided based on Article III federal standing concepts, which are of limited utility in considering standing under Colorado law. And as the division in Grossman noted, our cases "reflect a more expansive view of standing under Colorado law than that expressed under federal law." Grossman , 80 P.3d at 959.
¶ 38 We see no principled basis on which to distinguish Grossman . Therefore, we conclude that the district court didn't err by concluding that Representatives Saine and Williams have standing.
III. Conclusion
¶ 39 We affirm the judgment in part, reverse it in part, and remand the case to the district court for further proceedings. In doing so, we don't express any opinion as to the appropriate remedy in this case or any other case concerning the Red Flag law in the event the district court finds for the remaining plaintiffs on the merits of their challenge.
JUDGE FREYRE and JUDGE TOW concur.
--------
Notes:
[1] The Governor also moved to dismiss the complaint on the basis of laches, arguing that by waiting until May 2, 2019, two days before the end of the legislative session, to file their complaint, the plaintiffs had purposefully delayed filing suit so that the General Assembly would not have time to "fix the alleged procedural error" before the end of the session. The district court didn't rule on that issue. The Governor doesn't raise the issue on appeal and we don't express any view on its merits.
[2] The features of a political question identified in Baker are
a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.
Baker v. Carr , 369 U.S. 186, 217, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962).
[3] Given the justices’ treatment of Baker in Markwell , one might reasonably conclude that the utility of Baker in the context of the Reading Clause is, if not nil, at most marginal.
[4] In addressing this issue, the district court said the plaintiffs hadn't alleged any violation of House Rule 27(b). That is incorrect. Paragraphs 20 and 21 of the complaint alleged that Representative Williams and Saine "exercised [their] right" under House Rule 27(b) but were denied that right.
[5] In Markwell , the court held that although there may be more than one way for the House or Senate to "read" a bill, the courts may decide whether the bill was read. Markwell v. Cooke , 2021 CO 17, ¶ 32, 482 P.3d 422. That is, the courts may determine whether the method chosen by the General Assembly "is in conformity" with the constitutional requirement. Id. (quoting In re Interrogatories of Governor Regarding Certain Bills of Fifty-First Gen. Assembly , 195 Colo. 198, 209, 578 P.2d 200, 208 (1978) ). Likewise, courts may determine whether the House's method of dispensing with unanimity conforms to the constitution.
[6] Bevin addressed a challenge to a law under Kentucky's equivalent to the Reading Clause.
[7] The Governor didn't make this argument in the district court.
[8] The only legislative "remedy" that the Governor actually identifies in his briefs is that members have the right to have protests of actions "recorded in the chamber's journal." That would hardly remedy the alleged violation at issue. At oral argument, the Attorney General mentioned House Rule 11, which allows a member to request a quick vote on whether a decision of the Speaker should be overruled. Obviously, if the vote is against the member seeking the vote, that is no remedy at all.
[9] RMGO doesn't pay taxes but it alleges that its members do. It therefore claims "associational standing." See Colo. Union of Taxpayers Found. v. City of Aspen , 2018 CO 36, ¶ 10, 418 P.3d 506.
[10] The plaintiffs don't allege that the Red Flag law would not have been enacted if it had been read in full as required by the Reading Clause.
[11] We also observe that if the Governor's position on standing were correct, Markwell v. Cooke , 2021 CO 17, 482 P.3d 422, would be a nullity. This is because the challengers to the bill in that case were all state senators. They challenged the bill under the Reading Clause and didn't make any of the allegations of injury that the Governor argues in this case are required. In the Governor's view, therefore, the state senators in Markwell lacked standing. If that is so, the judgment in Markwell is void. See Ainscough v. Owens , 90 P.3d 851, 855 (Colo. 2004) (a court doesn't have jurisdiction if the plaintiff doesn't have standing); People in Interest of J.W. v. C.O. , 2017 CO 105, ¶ 21, 406 P.3d 853 ("A judgment rendered without jurisdiction is void ...."). Though we acknowledge that the court's failure to address standing in Markwell doesn't mean that the Markwell plaintiffs had standing, see Ariz. Christian Sch. Tuition Org. v. Winn , 563 U.S. 125, 144, 131 S.Ct. 1436, 179 L.Ed.2d 523 (2011), we are loath to declare Markwell void. And we observe that the defendants in Markwell , represented by highly competent and experienced counsel, didn't challenge the senators’ standing in the supreme court. (The Markwell defendants included lack of standing as an affirmative defense in their answer in the district court but didn't argue lack of standing thereafter.)
--------