JUSTICE BOATRIGHT delivered the Opinion of the Court.*
¶1 We accepted jurisdiction over two certified questions of law from the United States Court of Appeals for the Tenth Circuit.[1] See C.A.R. 21.1. The questions stem from an action brought by teacher Linda Johnson against Denver School District No. 1 ("the District") and the District's Board of Education, in which Johnson argues that by placing her on unpaid leave, the District breached her contract and violated her due process rights. The federal district court concluded that because Johnson was placed on unpaid leave, rather than terminated, she was not deprived of a property interest.
*713 Johnson v. Sch. Dist. No. 1, No. 12-CV-02950-MSK-MEH, 2014 WL 4462999, at *5-6 (D. Colo. Sept. 10, 2014). Johnson appealed that decision to the Tenth Circuit, which then certified the questions of law to us.
¶2 To answer the certified questions we examine the history of and the amendments to the statutes governing the processes for teacher hiring, transfer, and termination. In particular, we look to whether paragraph (c.5) in section 22-63-202(2), C.R.S. (2017)-which provides in subparagraph (IV) that a district may place nonprobationary teachers who are unable to secure a mutual-consent assignment on unpaid leave-applies either (1) to all nonprobationary teachers, or (2) only to those who are displaced for certain reasons enumerated in subparagraph (VII), which can be characterized as enrollment- or program-based decisions. We also look to whether a nonprobationary teacher placed on unpaid leave has a property interest in salary and benefits such that her placement on unpaid leave deprives her of a state property interest. After analyzing the statutory history and the current statutory language, we hold that the provisions of section 22-63-202(2)(c.5) apply to all displaced nonprobationary teachers, not just nonprobationary teachers who are displaced because of a reduction in enrollment or an administrative decision to eliminate certain programs-that is, the reasons stated in subparagraph (VII). We further hold that nonprobationary teachers who are placed on unpaid leave have no vested property interest in salary and benefits, meaning a nonprobationary teacher who is placed on unpaid leave under subparagraph (IV) is not deprived of a state property interest.
I. Facts and Procedural History
¶3 Over fifty years ago, the General Assembly enacted the Teacher Employment, Dismissal, and Tenure Act of 1967 ("TEDTA"). Ch. 435, sec. 1, §§ 123-18-1 to - 18, 1967 Colo. Sess. Laws 976. Among other things, TEDTA reaffirmed the then-existing status of a "tenure teacher" that had been codified in the Teacher Tenure Act of Colorado, ch. 212, sec. 3, 1953 Colo. Sess. Laws 559, 559-60. § 22-63-102(11), C.R.S. (1988).[2] Under TEDTA, a teacher who maintained continuous employment in the same school district for three academic years became tenured upon being retained for a fourth academic year. § 22-63-112(1), C.R.S. (1988). With limited exceptions, a tenured teacher was "entitled to a position of employment as a teacher" during her continuous service in the district where she became tenured. § 22-63-115(1), C.R.S. (1988). TEDTA permitted dismissal of a tenured teacher only for certain, enumerated reasons that qualify as good cause:
The grounds for dismissal of a tenure teacher shall be physical or mental disability, incompetency, neglect of duty, immorality, conviction of a felony or the acceptance of a guilty plea or a plea of nolo contendere to a felony, insubordination, or other good and just cause. No tenure teacher shall be dismissed for temporary illness, leave of absence previously approved by the board, or military leave of absence pursuant to article 3 of title 28, C.R.S.
§ 22-63-116, C.R.S. (1988). TEDTA also established procedures to dismiss a tenured teacher. See § 22-63-117(1)-(11), C.R.S. (1988). TEDTA remained the law for more than twenty years.
¶4 But the General Assembly supplanted TEDTA by enacting the Teacher Employment, Compensation, and Dismissal Act of 1990 ("TECDA"). Ch. 150, sec. 1, §§ 22-63-101 to -403, 1990 Colo. Sess. Laws 1117. Unlike its predecessor, TECDA did not define "tenure teacher"; in fact, it mentioned the word "tenure" only once (and in a manner irrelevant to the questions before us).[3] Compare §§ 22-63-101 to - 118, C.R.S. (1988), with §§ 22-63-101 to - 403, C.R.S. (1990). Instead, TECDA created a distinction between "probationary" and "nonprobationary" teachers, *714 defining the former as "a teacher who has not completed three full years of continuous employment with the employing school district and who has not been reemployed for the fourth year." § 22-63-103(7), C.R.S. (1990). But TECDA retained TEDTA's language on transferring teachers within a school district, providing that "[a] teacher may be transferred upon the recommendation of the chief executive officer of a school district from one school ... to another within the school district," so long as the teacher is qualified for her new position and does not suffer a salary reduction. Compare § 22-63-114(1), C.R.S. (1988), with § 22-63-206(1), C.R.S. (1990). And it retained for-cause grounds for teacher dismissal and a dismissal procedure. See §§ 22-63-301 to - 302, C.R.S. (1990).
¶5 Twenty years after it enacted TECDA, the General Assembly enacted Senate Bill 10-191 ("SB 191"). Ch. 241, 2010 Colo. Sess. Laws 1053. As relevant here, SB 191 amended the TECDA sections that pertain to employment contracts and teacher transfer. To the section that governs employment contracts, section 22-63-202, SB 191 added paragraph (c.5). Under that new paragraph, "each employment contract ... shall contain a provision stating that a teacher may be assigned to a particular school only with the consent of the hiring principal and with input from at least two teachers employed at the school." § 22-63-202(2)(c.5)(I), C.R.S. (2017). SB 191 labels such an assignment a "mutual consent assignment." E.g., § 22-63-202(2)(c.5)(IV). Also under paragraph (c.5), nonprobationary teachers who have not secured a mutual-consent assignment but who were deemed effective during the prior school year become members of a "priority hiring pool," ensuring them the first opportunity to interview for a "reasonable number of available positions for which [they are] qualified in the school district." § 22-63-202 (2)(c.5)(III)(A). But if a nonprobationary teacher fails to secure a position after the longer of twelve months or two hiring cycles, the teacher is placed on unpaid leave until she secures an assignment.[4] § 22-63-202(2)(c.5)(IV). Finally, subparagraph (VII) of paragraph (c.5) provides that this new paragraph "shall apply to any teacher who is displaced as a result of drop in enrollment; turnaround; phase-out; reduction in program; or reduction in building, including closure, consolidation, or reconstitution." § 22-63-202 (2)(c.5)(VII).
¶6 Furthermore, to the section that governs teacher transfer, section 22-63-206, SB 191 made a single alteration: the addition of subsection (5). In that subsection, the General Assembly clarified that "[n]othing in [ section 22-63-206 ] shall be construed as requiring a receiving school to involuntarily accept the transfer of a teacher. All transfers to positions at other schools of the school district shall require the consent of the receiving school." § 22-63-206(5), C.R.S. (2017).
¶7 In sum, TECDA-the law in effect since 1990, as amended by SB 191 in 2010-is devoid of tenure-related language. See §§ 22-63-101 to - 403. It instead distinguishes between "probationary" and "nonprobationary" teachers, § 22-63-103(7), and lacks any system of forced teacher placement. Indeed, under TECDA's mutual-consent assignment process, teacher contracts shall provide that a "teacher may be assigned to a particular school only with the consent of the hiring principal and with input from at least two teachers employed at the school." § 22-63-202(2)(c.5)(I). A teacher who is unable to secure a mutual-consent assignment for the longer of twelve months or two hiring cycles is placed on unpaid leave. § 22-63-202(2)(c.5)(IV). The unpaid-leave provision is the focal point of the questions before us.
¶8 Lisa Johnson, the plaintiff in the federal action, argues that a nonprobationary teacher who is placed on unpaid leave pursuant to SB 191's provisions suffers a breach of contract under TECDA and a deprivation of due process. Johnson is a nonprobationary teacher who has taught for the District since 1991.[5] In June 2008, the District issued a written recommendation to dismiss Johnson from the Godsman Elementary School for performance-related reasons. Following a *715 hearing, an administrative law judge entered an order recommending that the District retain Johnson. The District, in response, entered an order retaining Johnson for a one-year probationary period.[6] It then assigned Johnson to a temporary, one-year position for the 2009-10 school year. During that year, Johnson unsuccessfully applied for a long-term position through the District's school-based hiring process. The District assigned Johnson to a second one-year position at the same school for the 2010-11 school year, during which time she was again unable to obtain a long-term position through the District's school-based hiring process. The District assigned her to yet another temporary position at a different school for the 2011-12 school year. When Johnson was again unable to obtain a long-term position in 2012, the District placed her on unpaid leave pursuant to section 22-63-202(2)(c.5)(IV).
¶9 In response, Johnson filed suit in the U.S. District Court for the District of Colorado against the District and the District Board of Education, alleging that they violated TECDA and thus breached her contract by not following the dismissal process that nonprobationary teachers are entitled to. She also alleged that their actions violated her due process rights.
¶10 The district court granted the District's motion to dismiss these claims, concluding that the District was authorized to place Johnson on indefinite unpaid leave pursuant to TECDA section 22-63-202(2)(c.5)(IV), and that the District did not deprive Johnson of a property interest because she was not terminated, but was instead placed on unpaid leave. Johnson appealed to the Tenth Circuit, which certified two questions of law to us. We accepted jurisdiction and now answer those questions.
II. Standard of Review
¶11 "We review issues of statutory construction de novo." City & Cty. of Denver Sch. Dist. No. 1 v. Denver Classroom Teachers Ass'n, 2017 CO 30, ¶ 11, 407 P.3d 1220, 1222. Our goal in construing a statute is to give effect to legislative intent. People v. Hoskin, 2016 CO 63, ¶ 7, 380 P.3d 130, 133.
III. Analysis
¶12 We first examine paragraph (c.5) to determine whether it applies to all displaced nonprobationary teachers, or only those who are displaced for the reasons enumerated in subparagraph (VII). Reading section 22-63-202(2)(c.5) as a whole, we hold that the provisions of section 22-63-202(2)(c.5) apply to all displaced nonprobationary teachers, not just nonprobationary teachers who are displaced for the reasons stated in subparagraph (VII). We then consider whether a nonprobationary teacher who is not dismissed but instead placed on unpaid leave under section 22-63-202(2)(c.5)(IV) is deprived of a state property interest in salary and benefits. After analyzing the General Assembly's omission of protective, tenure-related language in TECDA, we hold that nonprobationary teachers who are placed on unpaid leave have no vested property interest in salary and benefits, meaning a nonprobationary teacher who is placed on unpaid leave under subparagraph (IV) is not deprived of a state property interest.
A. Section 22-63-202(2)(c.5) Applies to All Displaced Nonprobationary Teachers
¶13 The first certified question is whether section 22-63-202(2)(c.5) applies to all nonprobationary teachers not employed in a "mutual consent" placement, or only to those displaced because of enrollment- or program-based decisions.
¶14 As we have explained, section 22-63-202(2)(c.5)(I) requires teacher contracts to provide that the teacher will be assigned to a school only with the consent of the receiving principal. A nonprobationary teacher who is unable to secure a mutual-consent assignment at a school is, under subparagraph (IV), placed on unpaid leave until she secures such an assignment. Subparagraph (VII) further provides: "This paragraph (c.5) shall apply to any teacher who is displaced as a result of *716 drop in enrollment; turnaround; phase-out; reduction in program; or reduction in building, including closure, consolidation, or reconstitution." The issue now before us is whether subparagraph (VII) limits paragraph (c.5)'s applicability to only those teachers displaced for a reason enumerated in this subparagraph.
¶15 Read in isolation, subparagraph (VII) does not clarify whether paragraph (c.5) applies only to teachers displaced for the enumerated reasons, or if it applies to all displaced nonprobationary teachers who are unable to obtain a position through the mutual-consent process. We must therefore resort to other tools of statutory construction to resolve the question.
¶16 Johnson urges us to apply the canon of expressio unius est exclusio alterius-under which "the inclusion of certain items implies the exclusion of others," Beeghly v. Mack, 20 P.3d 610, 613 (Colo. 2001) -and hold that because the General Assembly chose to enumerate specific instances in which paragraph (c.5) applies, its intent was for the paragraph to apply only in those circumstances. Specifically, Johnson argues that subparagraph (VII) created an exhaustive list of grounds for which a teacher may be placed on indefinite, unpaid leave. She contends that if the General Assembly intended for subparagraph (VII) to be non-exhaustive, it would have written the subparagraph differently, perhaps by using the language "including, but not limited to," before listing the specific grounds for placement on unpaid leave.
¶17 Like other canons of construction, expressio unius is a tool for ascertaining the General Assembly's intent, but it should not be applied where doing so would undermine that intent. See Sheely v. People, 54 Colo. 136, 129 P. 201, 202 (1913) ("[Canons of construction] can be used only to aid the courts in ascertaining the legislative intent.... If they do not afford any aid, they are not to be resorted to."). Indeed, the canon of expressio unius has its limits and "properly applies only when the unius... can reasonably be thought to be an expression of all that shares in the grant or prohibition involved." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 107 (2012). In other words, the canon applies only when the list is exhaustive. And like any other canon, it must yield where its application would render other statutory language meaningless. See Pineda-Liberato v. People, 2017 CO 95, ¶ 39, 403 P.3d 160, 166 ("We cannot ... interpret statutory provisions so as to render any of their words or phrases meaningless or superfluous."). Our review of TECDA reveals that applying expressio unius here would fail to give effect to the entire statute for three reasons.
¶18 First, the General Assembly did not expressly provide that a district may place a nonprobationary teacher on unpaid leave, as specified in subparagraph (IV), only when a teacher is displaced for the reasons enumerated in subparagraph (VII). Such a reading would be contrary to-and would in fact nullify-subparagraph (I) of paragraph (c.5), where the General Assembly unambiguously required each employment contract to provide that "a teacher may be assigned to a particular school only with the consent of the hiring principal and with input from at least two teachers employed at the school." § 22-63-202(2)(c.5)(I) (emphasis added). Had the General Assembly used similarly restrictive language in subparagraph (VII), then we could similarly conclude that paragraph (c.5) applies only in the enumerated circumstances. But the General Assembly chose not to do so.
¶19 Second, the General Assembly made clear that the express purpose of paragraph (c.5)'s mutual-consent requirement is to facilitate "the fair evaluation of a principal based on the demonstrated effectiveness of his or her teachers." § 22-63-202(2)(c.5)(I). Reading paragraph (c.5) to apply only to teachers displaced for the reasons enumerated in subparagraph (VII) (e.g., a drop in enrollment) would undermine that express purpose and leave no process to place teachers who have been displaced for reasons not specified in subparagraph (VII). Assigning a displaced teacher to another school without the consent of the receiving school presumably impacts the fair evaluation of a principal, regardless of whether the teacher was initially displaced for those enumerated reasons. Indeed, under Johnson's proposed construction of the statute, *717 a school would not have to receive a nonprobationary teacher who had been displaced as a result of a drop in enrollment, but would have to receive one who was displaced for cause. That would be an absurd result. See Frazier v. People, 90 P.3d 807, 811 (Colo. 2004) ("A statutory interpretation leading to an illogical or absurd result will not be followed.").
¶20 Third, the General Assembly required that a nonprobationary teacher shall be notified of her removal when it is determined that her services "are no longer required for the reasons set forth in subparagraph (VII) of this paragraph (c.5)." § 22-63-202 (2)(c.5)(III)(B). Had the legislature intended subparagraph (VII) to limit the applicability of paragraph (c.5), it would have been unnecessary to specify that the notification requirements in subparagraph (III)(B) apply only when a nonprobationary teacher is displaced for the reasons enumerated in subparagraph (VII). See Kinder Morgan CO2 Co. v. Montezuma Cty. Bd. of Comm'rs, 2017 CO 72, ¶ 24, 396 P.3d 657, 664 ("We strive to avoid statutory interpretations that render certain words or provisions superfluous or ineffective.").
¶21 So instead of applying expressio unius, as Johnson urges, we find the whole-text canon-under which we "consider the entire text, in view of its structure and of the physical and logical relation of its many parts," Scalia & Garner, supra, at 167-to be a better vehicle with which to examine section 22-63-202. Reading that section as a whole, we hold that section 22-63-202(c.5) applies to all displaced nonprobationary teachers, not merely to those displaced for the reasons enumerated in section 22-63-202 (c.5)(VII).
¶22 We recognize that, in Johnson's view, reading paragraph (c.5) to allow any teacher to be placed on unpaid leave renders subparagraph (VII) meaningless, because a district "would not have to show cause or rely on the lay-off procedure to dismiss teachers," and could merely withdraw mutual consent. Opening Br. 21. But this argument overlooks the differences between dismissal and placement on unpaid leave. A nonprobationary teacher who is placed on unpaid leave, unlike one who is dismissed, is entitled to various benefits: If she is placed on unpaid leave for a reason enumerated in subparagraph (VII), the district "shall immediately provide [her] with a list of all vacant positions for which [she] is qualified, as well as a list of vacancies in any area identified by the school district to be an area of critical need," § 22-63-202 (2)(c.5)(III)(B); and if she secures an assignment within the district while on unpaid leave, "the school district shall reinstate [her] salary and benefits at the level they would have been if [she] had not been placed on unpaid leave," § 22-63-202(2)(c.5)(IV). Johnson's argument also misses the purpose of SB 191's unpaid-leave provisions, which-as several current and former legislators argued in an amicus brief filed in a related case-is to ensure that only the best teachers are in the classroom:
S.B. 191's new system is one of mutual consent: both the displaced teacher and the principal of the new school must agree that the hire is the right fit. A non-probationary teacher has multiple opportunities to earn a position based on merit. If that effort proves unsuccessful, the school district may place the teacher on unpaid leave.
Amended Amicus Curiae Brief of Senator Michael Johnston et al. at 6, Sch. Dist. No. 1 v. Masters, 2018 CO 18, 413 P.3d 723 (citation omitted). Accordingly, we disagree that reading paragraph (c.5) to apply to all displaced teachers renders subparagraph (VII) meaningless.
¶23 We turn now to the second certified question.
B. Nonprobationary Teachers Who Are Placed on Unpaid Leave Do Not Have a Property Interest in Salary and Benefits Under TECDA
¶24 The second certified question is narrow: Whether a nonprobationary teacher who is not dismissed but instead placed on unpaid leave under section 22-63-202(2)(c.5)(IV) is deprived of a state property interest in salary and benefits. Hence, we need not address the entire breadth of the relevant amendments. That said, we conclude that, because TECDA eliminated the word "tenure" and other entitlement and durational *718 language, a nonprobationary teacher has no vested property interest in salary and benefits. We therefore hold that nonprobationary teachers who are placed on unpaid leave have no vested property interest in salary and benefits, meaning a nonprobationary teacher who is placed on unpaid leave under subparagraph (IV) is not deprived of a state property interest.
¶25 The United States Constitution prohibits states from depriving any person of property without due process of law. U.S. Const. amend. XIV. If, as Johnson contends, Colorado's nonprobationary teachers have a property interest in continued employment, the General Assembly "could not deprive them of this property without due process." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).
¶26 Neither the United States Constitution nor the Colorado Constitution defines what constitutes property for the purposes of due process. Rather, the constitutions protect property interests that are "defined by existing rules or understandings that stem from an independent source such as state law." Dove Valley Bus. Park Assocs. v. Bd. of Cty. Comm'rs, 945 P.2d 395, 401 (Colo. 1997) (quoting Webb's Fabulous Pharmacies, Inc. v. Beckwith, 449 U.S. 155, 161, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980) ); Phillips v. Washington Legal Found., 524 U.S. 156, 163-64, 118 S.Ct. 1925, 141 L.Ed.2d 174 (1998). It follows that a property interest does not arise from a "mere unilateral expectation" or an "abstract need." Webb's Fabulous Pharmacies, 449 U.S. at 161, 101 S.Ct. 446.
¶27 Here, TECDA creates no such property interest. Whereas TECDA's predecessor statute was titled the "Teacher Employment, Dismissal, and Tenure Act of 1967" (emphasis added) and used the term "tenure" throughout, TECDA makes no similar reference to tenure. Compare §§ 22-63-101 to - 118, C.R.S. (1988), with §§ 22-63-101 to - 403, C.R.S. (1990). We have described "tenure" as a condition which "by its nature engenders a reasonable and objective expectancy of continued employment." Howell v. Woodlin Sch. Dist. R-104, 198 Colo. 40, 596 P.2d 56, 60 (1979), overruled on other grounds by deKoevend v. Bd. of Educ., 688 P.2d 219 (Colo. 1984). The General Assembly's decision to omit the formerly prevalent word "tenure" from TECDA indicates its intent to eliminate that expectancy.
¶28 The General Assembly's removal of entitlement and durational language in TECDA that was present in TEDTA further evinces this intent. TEDTA guaranteed that a tenured teacher "shall be entitled to a position of employment as a teacher." § 22-63-115, C.R.S. (1988). The Supreme Court has found such entitlement language instructive in finding the existence of state-law property interests. See Loudermill, 470 U.S. at 538, 105 S.Ct. 1487 (concluding that a statute "plainly" created a property interest when employees were "classified civil service employees, entitled to retain their positions during good behavior and efficient service, who could not be dismissed except" for certain enumerated reasons). But in 1990 TECDA affirmatively removed this language. We read this amendment to have meaning: "A legislative amendment either clarifies or changes existing law, and we presume that by amending the law the legislature has intended to change it." City of Colo. Springs v. Powell, 156 P.3d 461, 465 (Colo. 2007). We therefore conclude that by removing entitlement and durational language in TECDA, the General Assembly intended to eliminate any property interest in salary and benefits.
¶29 Accordingly, we hold that nonprobationary teachers who are placed on unpaid leave have no vested property interest in salary and benefits, meaning a nonprobationary teacher who is placed on unpaid leave under subparagraph (IV) is not deprived of a state property interest.
IV. Conclusion
¶30 We hold that section 22-63-202(2)(c.5) applies to all displaced nonprobationary teachers, and that a nonprobationary teacher who is placed on unpaid leave under section 22-63-202(2)(c.5)(IV) is not deprived of a state property interest in salary and benefits. Having thus answered the certified questions, *719 we now return the case to the Tenth Circuit.
JUSTICE GABRIEL concurs in part and dissents in part, and JUSTICE HOOD and JUSTICE HART join in the concurrence in part and dissent in part.

This opinion was originally assigned to another justice but was reassigned to Justice Boatright on November 3, 2017.

We accepted jurisdiction to review the following issues:
1. Whether the provisions of section 22-63-202(2)(c.5), C.R.S. (2015), apply to all nonprobationary teachers who are not employed in a "mutual consent" placement, or whether subsection (c.5) governs only those nonprobationary teachers who are displaced for the reasons stated in section 22-63-202(2)(c.5)(VII), C.R.S. (2015).
2. Whether a nonprobationary teacher, not dismissed but instead placed on unpaid leave under section 22-63-202(2)(c.5)(IV), C.R.S. (2015), is deprived of a state property interest in salary and benefits.

We cite to the 1988 Colorado Revised Statutes when discussing TEDTA because in that year, as today, the relevant provisions were codified in title 22, whereas in some earlier years they were codified elsewhere.

Specifically, TECDA required that a committee to study teacher employment and compensation issues include as a member "[o]ne person from the business community knowledgeable about teacher employment and tenure issues." § 22-63-104(III)(E), C.R.S. (1990).

SB 191 does not define "unpaid leave."

We take these facts from the Tenth Circuit's order certifying questions of law to us and from Johnson's second amended complaint.

TECDA provides that, after receiving the hearing officer's entry of a written order with findings and recommendations, the school board may dismiss the teacher, retain her, or place her on a one-year probation. § 22-63-302(9), C.R.S. (2017).