Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us. Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
May 28, 2019

**2019 CO 40**

**No. 18SA228,** *In re Reeves-Toney v. School District No. 1 in the City & County of Denver—Standing—Persons Entitled to Sue—Taxpayers.*

In this original proceeding under C.A.R. 21, the supreme court reviews the trial court's denial of a motion to dismiss a constitutional challenge to the mutual consent provisions of section 22-63-202(2)(c.5), C.R.S. (2018), of the Teacher Employment, Compensation, and Dismissal Act. Plaintiff, a nonprobationary teacher employed by Defendant School District No. 1 in the City and County of Denver, alleges that these provisions violate the local control clause of article IX, section 15 of the Colorado Constitution by delegating local school boards' hiring decisions to principals and other administrators. The supreme court agrees with the trial court that Plaintiff lacks individual standing to bring her claim, and holds that because Plaintiff has not alleged an injury based on an unlawful expenditure of taxpayer money, she also lacks taxpayer standing to bring her challenge to section 22-63-202(2)(c.5). Accordingly, the supreme court makes the rule to show cause absolute and remands the case to the trial court with directions to dismiss Plaintiff's complaint.

## The Supreme Court of the State of Colorado
2 East 14th Avenue • Denver, Colorado 80203

---

### 2019 CO 40

---

**Supreme Court Case No. 18SA228**
*Original Proceeding Pursuant to C.A.R. 21*
District Court, City and County of Denver, Case No. 18CV31058
Honorable J. Eric Elliff, Judge

---

**In Re
Plaintiff:**

Rebecca Reeves-Toney,

v.

**Defendant:**

School District No. 1 in the City and County of Denver, State of Colorado.

---

**Rule Made Absolute**
*en banc*
May 28, 2019

---

**Attorney for Plaintiff:**
Charles Kaiser
    *Denver, Colorado*

**Attorneys for Defendant:**
Molly H. Ferrer
    *Denver, Colorado*

Connelly Law, LLC
Sean Connelly
    *Denver, Colorado*

**Attorneys for Amici Curiae the State of Colorado and the People of Colorado:**
Philip J. Weiser, Attorney General
Julie C. Tolleson, First Assistant Attorney General
Joseph Peters, Assistant Attorney General
Danny Rheiner, Assistant Attorney General
    *Denver, Colorado*

**JUSTICE MÁRQUEZ** delivered the Opinion of the Court.

¶1     In this original proceeding under C.A.R. 21, Defendant-Petitioner School District No. 1 in the City and County of Denver (DPS) seeks review of the trial court's denial of its motion to dismiss Plaintiff-Respondent Rebecca Reeves-Toney's constitutional challenge to the "mutual consent" provisions of section 22-63-202(2)(c.5) of the Teacher Employment, Compensation, and Dismissal Act of 1990 (TECDA), §§ 22-63-101 to -403, C.R.S. (2018).  Reeves-Toney alleges that these provisions violate the local control clause of article IX, section 15 of the Colorado Constitution by delegating local school boards' hiring decisions to principals and other administrators.

¶2     DPS moved to dismiss Reeves-Toney's complaint, arguing, among other things, that she lacks standing to bring her claim.  The trial court agreed that Reeves-Toney lacks individual standing, but nevertheless concluded that she sufficiently alleged taxpayer standing to challenge section 22-63-202(2)(c.5) and plausibly alleged that the statute is facially unconstitutional.  The court thus denied the motion to dismiss.

¶3     DPS sought C.A.R. 21 relief.  We issued a rule to show cause and now make the rule absolute.  We hold that because Reeves-Toney has not alleged an injury based on an unlawful expenditure of taxpayer money, she has failed to demonstrate a clear nexus between her status as a taxpayer and the challenged government action.  Reeves-Toney therefore lacks taxpayer standing to bring her constitutional challenge to section 22-63-202(2)(c.5).  Accordingly, we make the rule to show cause absolute and remand the case to the trial court with directions to dismiss Reeves-Toney's complaint.

## I. Background

¶4    In 2010, the General Assembly enacted Senate Bill 10-191 (SB 191), which significantly amended TECDA provisions concerning teacher contracts and the transfer process.[1] SB 191 eliminated the earlier practice of transferring teachers to schools without the consent of the principal of the recipient school. *See* § 22-63-206(5), C.R.S. (2018) ("All transfers to positions at other schools of the school district shall require the consent of the receiving school."). The bill also added paragraph (c.5) to section 22-63-202(2), which provides, as relevant here, that "each employment contract . . . shall contain a provision stating that a teacher may be assigned to a particular school only with the consent of the hiring principal and with input from at least two teachers employed at the school." § 22-63-202(2)(c.5)(I), C.R.S. (2018). Such an assignment is called a "mutual consent assignment." § 22-63-202(2)(c.5)(IV).

¶5    Under SB 191, nonprobationary teachers[2] who were deemed effective during the prior school year and who have not secured a mutual consent placement become members of a "priority hiring pool" for available positions. § 22-63-202(2)(c.5)(III)(A). However, nonprobationary teachers who are unable to secure such a position after the

---

[1] Amici Curiae the State of Colorado and the People of Colorado have described SB 191 as a landmark legislative reform.

[2] A nonprobationary teacher is distinguishable from a probationary teacher, defined under SB 191 as "a teacher who has not completed three consecutive years of demonstrated effectiveness or a nonprobationary teacher who has had two consecutive years of demonstrated ineffectiveness." § 22-63-103(7), C.R.S. (2018).

4

longer of twelve months or two hiring cycles are placed on unpaid leave until they are able to secure an assignment. § 22-63-202(2)(c.5)(IV).

¶6     This is the third time this court has considered a challenge to the constitutionality of SB 191. Last year, we took up two challenges to the law's unpaid leave provisions. In *Johnson v. School District No. 1 in the County of Denver*, we addressed certified questions of law from the Tenth Circuit in a case in which a teacher argued that her placement on unpaid leave under section 22-63-202(2)(c.5) breached her contract and violated her due process rights. 2018 CO 17, ¶ 1, 413 P.3d 711, 712. We held that nonprobationary teachers who are placed on unpaid leave have no vested property interest in salary and benefits. *Id.* at ¶ 2, 413 P.3d at 713. We concluded, therefore, that a nonprobationary teacher placed on unpaid leave under section 22-63-202(2)(c.5)(IV) is not deprived of a property interest. *Id.*

¶7     In *School District No. 1 in the City & County of Denver v. Masters*, several teachers, together with the Denver Classroom Teachers Association (DCTA), alleged that DPS had invoked SB 191 to place hundreds of teachers on unpaid leave in violation of their rights to due process of law and the contracts clause of the Colorado Constitution. 2018 CO 18, ¶ 1, 413 P.3d 723, 725. Citing our decision in *Johnson*, announced the same day, we held that TECDA did not create a contractual relationship or vest nonprobationary teachers placed on unpaid leave with a property interest in salary and benefits. *Id.* at ¶ 2, 413 P.13 at 725–26.

¶8 Approximately two weeks after we issued our decisions in *Johnson* and *Masters*, Reeves-Toney filed the complaint in this case, raising the present challenge to SB 191's mutual consent provisions based on article IX, section 15 of the Colorado Constitution.

## II. Facts and Procedural History

¶9 Plaintiff Rebecca Reeves-Toney is a nonprobationary elementary school teacher employed by DPS. On February 9, 2015, she took workers' compensation leave from her position after sustaining repeated injuries to her elbow while on the job.

¶10 Fourteen months later, on April 28, 2016, DPS sent Reeves-Toney a letter notifying her that it would no longer hold her position open. According to the letter, the collective bargaining agreement between DPS and the DCTA provided that when a teacher is on leave for a serious medical condition, the teacher's position with DPS will not be held open for more than one year.

¶11 In August 2017, the same month Reeves-Toney's temporary disability payments ended, DPS placed her in a limited term assignment for the 2017-18 school year. DPS also informed Reeves-Toney that if she did not secure a mutual consent position by August 31, 2018, she would be placed on unpaid leave.

¶12 On March 26, 2018, having been unable to secure a mutual consent position despite diligent efforts, Reeves-Toney filed the instant complaint seeking to enjoin DPS from

placing her on unpaid leave.[3] Reeves-Toney challenges the constitutionality of section 22-63-202(2)(c.5), asserting that the statute violates local school boards' right to "control of instruction" under article IX, section 15 of the Colorado Constitution by delegating to principals and other administrators the power to decide whether to afford a displaced teacher the opportunity to continue to teach for, and get paid by, DPS.

¶13 DPS sought to dismiss Reeves-Toney's complaint under C.R.C.P. 12(b)(5), arguing that she lacks standing to challenge the statute and failed to state a claim upon which relief could be granted. The trial court denied the motion. It agreed with DPS that Reeves-Toney lacks individual standing to pursue her complaint, reasoning that under this court's decision in *Johnson*, nonprobationary teachers who are placed on unpaid leave have no vested property interest in salary and benefits. ¶ 1, 413 P.3d at 713. Thus, the trial court concluded, Reeves-Toney could not establish a legally protected interest in continued employment.

¶14 Nevertheless, the trial court concluded that Reeves-Toney had sufficiently alleged taxpayer standing to challenge the mutual consent provisions in section 22-63-202(2)(c.5). The trial court observed that Colorado historically provided for broad taxpayer standing. "So slight was the standing burden," the trial court noted, that "the inquiry had been said

---

[3] In her complaint, Reeves-Toney sought declaratory and injunctive relief. During the pendency of this original proceeding, Reeves-Toney notified this court that she has obtained a mutual consent position. As a result, she no longer seeks injunctive relief. We agree with the parties that this development does not render the case moot because Reeves-Toney continues to seek declaratory relief and back pay.

to 'collapse' the two-part standing inquiry into a single-question issue of whether the plaintiff-taxpayer has averred a violation of a specific constitutional provision." But the trial court acknowledged that more recently, in *Hickenlooper v. Freedom From Religion Foundation, Inc.*, we articulated a limit on that broad conceptualization of taxpayer standing, holding that "to satisfy the injury-in-fact requirement, . . . the plaintiff must demonstrate a clear nexus between his status as a taxpayer and the challenged government action." 2014 CO 77, ¶ 12, 338 P.3d 1002, 1008. In *Hickenlooper*, the trial court noted, we concluded the plaintiffs lacked taxpayer standing because they failed to "assert any injury based on an unlawful expenditure of their taxpayer money," or to "allege that their tax dollars [we]re being used in an unconstitutional manner." *Id.* at ¶ 14, 338 P.3d at 1008.

¶15    Turning to the complaint in this case, the trial court acknowledged that Reeves-Toney had alleged neither an "expenditure nor transfer of taxpayer funds . . . as related to [her] particular circumstances." Nevertheless, the trial court was persuaded by Reeves-Toney's argument that she had established a clear nexus between her status as a taxpayer and the allegedly unconstitutional hiring procedure because she "is a taxpayer[4] and her tax dollars finance teachers' salaries which are distributed pursuant to employment contracts which are entered into pursuant to the allegedly unconstitutional

---

[4] Reeves-Toney's complaint did not allege that she was a taxpayer, but the trial court nevertheless concluded that she adequately alleged taxpayer status by virtue of her employment with DPS.

procedure." The trial court further found that Reeves-Toney had plausibly alleged that the mutual consent provisions of section 22-63-202(2)(c.5) impermissibly usurp the local board's decision-making authority in violation of the local control provision in article IX, section 15 of the Colorado Constitution. The trial court therefore denied DPS's motion to dismiss, concluding that Reeves-Toney had sufficiently alleged that the mutual consent provisions are facially unconstitutional.

¶16 DPS then filed this C.A.R. 21 petition, and we issued a rule to show cause.

## III. Analysis

¶17 We begin by discussing the exercise of our original jurisdiction in this case. Next, after setting out the applicable standard of review, we consider whether Reeves-Toney's complaint alleged an injury in fact in her capacity as a taxpayer sufficient to establish standing to challenge the constitutionality of the mutual consent provisions in section 22-63-202(2)(c.5). We conclude it did not. We hold that because Reeves-Toney has not alleged an injury based on an unlawful expenditure of taxpayer money, she has failed to establish a clear nexus between her status as a taxpayer and the challenged government action. Accordingly, we make the rule to show cause absolute, and remand the case to the trial court with directions to dismiss Reeves-Toney's complaint.

### A. Original Jurisdiction

¶18 An original proceeding under C.A.R. 21 is an extraordinary remedy that is limited in both its purpose and availability. *In re People v. Tafoya*, 2019 CO 13, ¶ 13, 434 P.3d 1193, 1195. That said, we have chosen to exercise our jurisdiction in cases that "raise issues of

9

first impression and that are of significant public importance." *Dwyer v. State*, 2015 CO 58, ¶ 4, 357 P.3d 185, 187–88. In *Dwyer*, for example, we chose to review a trial court's order denying a motion to dismiss a constitutional challenge in a case with overriding public importance and heightened interest in a swift resolution, observing that the case presented "a pure question of law" and "the existing record [was] sufficient" for resolution of the issues. *Id.* at ¶ 4, 357 P.3d at 188.

¶19 Reeves-Toney's complaint challenges the constitutionality of landmark legislation that has already been the subject of significant litigation. Although our decisions in *Masters* and *Johnson* addressed some of the constitutional concerns with SB 191, the instant complaint raises a new constitutional challenge—whether the Act's mutual consent provisions violate article IX, section 15 of the Colorado Constitution—a claim that had been raised in at least one other trial court action at the time we granted review. *See Warden v. Westminster Pub. Sch.*, No. 2018CV31083 (Adams Cty. Dist. Ct. filed June 19, 2018). Finally, the petition presents a pure question of law amenable to swift resolution without further proceedings in the trial court. We conclude that these circumstances merit the exercise of our original jurisdiction.

## B. Standard of Review

¶20 "Whether a plaintiff has standing to sue is a question of law that we review de novo." *Barber v. Ritter*, 196 P.3d 238, 245 (Colo. 2008). In determining whether standing has been established, we accept as true all material allegations of fact in the complaint. *State Bd. for Cmty. Colleges & Occupational Educ. v. Olson*, 687 P.2d 429, 434 (Colo. 1984).

## C. Reeves-Toney Lacks Taxpayer Standing

¶21    Standing is a threshold issue that must be satisfied in order for a court to decide a case on the merits. *Ainscough v. Owens*, 90 P.3d 851, 855 (Colo. 2004). The purpose of the standing inquiry is to test a litigant's right to raise a legal argument or claim. *City of Greenwood Vil. v. Petitioners for the Proposed City of Centennial*, 3 P.3d 427, 436 (Colo. 2000).

¶22    To establish standing under Colorado law, a plaintiff must show both "(1) that [she] 'suffered an injury in fact,' and (2) that the injury was to a 'legally protected interest.'" *Barber*, 196 P.3d at 245 (quoting *Wimberly v. Ettenberg*, 570 P.2d 535, 538 (Colo. 1977)). The standing doctrine is rooted in the separation of the judicial, legislative, and executive powers mandated by article III of the Colorado Constitution. It prevents judicial intrusion into legislative and executive spheres by permitting only injured parties—not the public in general—to seek redress in the courts. *Id.* at 254–55 (Eid, J., concurring in the judgment). Put differently, the standing requirement distinguishes "those particularly injured by . . . government action," who may present their controversy for resolution by the courts, from members of the general public, whose interests are more remote and who "must address their grievances against the government through the political process." *Id.* at 255 (Eid, J., concurring in the judgment); *see also Hickenlooper*, ¶ 9, 338 P.3d at 1006 ("[T]he injury-in-fact requirement[] maintains the separation of powers . . . by preventing courts from invading legislative and executive spheres.").

¶23 Although Colorado permits relatively broad taxpayer standing,[5] "the injury-in-fact requirement [provides] conceptual limits to the doctrine when plaintiffs challenge an allegedly unlawful government action." *Hickenlooper*, ¶ 12, 338 P.3d at 1008. We have recently clarified that to meet the injury-in-fact requirement, a plaintiff relying on her status as a taxpayer to confer standing must demonstrate "a clear nexus between h[er] status as a taxpayer and the challenged government action." *Id.* Importantly, the interest of the *taxpayer* who challenges the constitutionality of government action is her "economic interest in having h[er] tax dollars spent in a constitutional manner." *Conrad v. City & Cty. of Denver*, 656 P.2d 662, 668 (Colo. 1982). Thus, a taxpayer asserts injury in fact to a legally protected interest when she challenges the allegedly unconstitutional expenditure of public funds to which she has contributed by her payment of taxes. *See Hickenlooper*, ¶ 12, 338 P.3d at 1008.

¶24 In *Barber v. Ritter*, for example, we held that plaintiffs established taxpayer standing where they alleged that the legislature had transferred money from certain cash funds to the state's General Fund to be used for general government expenses without voter approval in violation of article X, section 20 of the Colorado Constitution, and that the transfers created unconstitutional debt in violation of article XI, sections 3 and 4.

---

[5] Colorado's approach stands in contrast to the United States Supreme Court's narrow view of taxpayer standing. *See Hickenlooper*, ¶ 12, 338 P.3d at 1008 (observing that under federal law, "[a]bsent special circumstances . . . standing cannot be based on a plaintiff's mere status as a taxpayer" (quoting *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 134 (2011))).

196 P.3d at 247, 253. Similarly, in *Nicholl v. E-470 Public Highway Authority*, we concluded that a taxpayer who challenged the E-470 highway financing plan under article X, section 20 had standing to "seek[] review of what he claims is an unlawful government expenditure which is contrary to our state constitution." 896 P.2d 859, 866 (Colo. 1995). In *Dodge v. Department of Social Services*, we held that taxpayers had standing to challenge expenditures of public funds to finance nontherapeutic abortions where they alleged that such spending violated a constitutional article providing that no money could be disbursed from treasury except upon appropriations made by law. 600 P.2d 70, 71–72. (Colo. 1979). And in *Conrad v. City & County of Denver*, we held taxpayers had standing to challenge government use of public funds on a nativity scene they alleged unconstitutionally supported or gave preference to one religion to the exclusion of others. 656 P.2d 662, 669 (Colo. 1982). In each of these cases, the alleged unlawful government action concerned the alleged misappropriation or misuse of taxpayer money.

¶25   In contrast, in *Hickenlooper*, plaintiffs alleged that certain governors of Colorado had unconstitutionally endorsed religion during their time in office by issuing honorary proclamations recognizing a statewide day of prayer. ¶ 12, 338 P.3d at 1005. Though the plaintiffs asserted in their complaint that they were Colorado taxpayers, they did "not assert any injury based on an unlawful expenditure of their taxpayer money, nor . . . allege that their tax dollars [were] being used in an unconstitutional manner." *Id.* at ¶ 14, 338 P.3d at 1008. We therefore held that plaintiffs did not allege an injury in fact sufficient to establish standing in their capacity as taxpayers. *Id.* at ¶ 15, 338 P.3d at 1008. In

13

reaching that conclusion, we specifically rejected the argument that certain costs incidental to the issuance of the proclamations could establish the requisite nexus between plaintiffs' status as taxpayers and the challenged government action. *Id.* We reasoned that to allow such costs (which included use of a computer, basic office supplies, and state employee time) to confer standing would permit "any and all members of the public . . . to challenge literally any government action." *Id.* We declined to read article III so expansively. *Id.*

¶26 Similarly, in *Brotman v. East Lake Creek Ranch, L.L.P.*, we concluded that the Land Board's alleged mismanagement of school lands had no effect on the plaintiff (a neighboring landowner) as a taxpayer where the plaintiff did not allege that the Land Board unlawfully spent any taxpayer funds, and where the alleged mismanagement of school lands could not, in any event, cause a shortfall in funds that would affect the state's financing of schools through the taxing power. 31 P.3d 886, 891–92 (Colo. 2001).

¶27 Here, Reeves-Toney challenges the constitutionality of the mutual consent provisions of section 22-63-202(2)(c.5). The first of those provisions, subsection 22-63-202(2)(c.5)(I), requires teachers' contracts to include a provision regarding mutual consent assignments:

> [E]ach employment contract . . . shall contain a provision stating that a teacher may be assigned to a particular school only with the consent of the hiring principal and with input from at least two teachers employed at the school and chosen by the faculty of teachers at the school to represent them in the hiring process, and after a review of the teacher's demonstrated effectiveness and qualifications, which review demonstrates that the teacher's qualifications and teaching experience support the instructional practices of his or her school.

14

The second, section 22-63-202(2)(c.5)(IV), provides that a nonprobationary teacher who is unable to secure a mutual consent position within twelve months or two hiring cycles shall be placed on unpaid leave:

> If a nonprobationary teacher is unable to secure a mutual consent assignment at a school of the school district after twelve months or two hiring cycles, whichever period is longer, the school district shall place the teacher on unpaid leave until such time as the teacher is able to secure an assignment.

Reeves-Toney complains that these provisions unconstitutionally delegate local school boards' responsibility to control instruction as required by article IX, section 15 of the Colorado Constitution. That provision directs the General Assembly to provide for the organization of school districts, each with a board of education made up of elected directors. Colo. Const. art. IX, § 15. It further provides that "[s]aid directors shall have control of instruction in the public schools of their respective districts." *Id.*

¶28     We conclude that Reeves-Toney has failed to establish a clear nexus between her status as a taxpayer and the constitutional violation she alleges. To meet the injury-in-fact requirement, Reeves-Toney was required to show that "her tax dollars [we]re spent in an unconstitutional manner." *Barber*, 196 P.3d at 255 (Eid, J., concurring in the judgment). But as the trial court found, her complaint asserted "neither an alleged expenditure nor transfer of taxpayer funds." Given this finding, we hold the trial court erred in concluding that Reeves-Toney had nonetheless established standing as a taxpayer.

¶29     We disagree with the trial court's reasoning that teachers' salaries paid by DPS provide a sufficient nexus to confer taxpayer standing to challenge section

15

22-63-202(2)(c.5). In arguing that the mutual consent provisions violate article IX, section 15, Reeves-Toney does not allege that DPS is constitutionally prohibited from paying the salaries of any of its teachers. In fact, she does not allege any direct fiscal impact on taxpayers tethered to SB 191's requirement that the hiring principal consent to teacher assignments. Instead, DPS's expenditure of money on teachers' salaries is, at most, incidental to the mutual consent assignment provisions Reeves-Toney challenges as violating school boards' right to local "control of instruction" under article IX, section 15. *Cf. Hickenlooper*, ¶ 15, 338 P.3d at 1008.

¶30 Taxpayer standing does not flow from every allegedly unlawful government action that has a cost. If it did, taxpayers would have standing to challenge virtually every government action with which they disagreed, and our state courts would be transformed into "forums in which to air generalized grievances about the conduct of state government." *Dodge*, 600 P.2d at 72 (Dubofsky, J., specially concurring); *cf. Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 593 (2007) ("[I]f every federal taxpayer could sue to challenge any Government expenditure, the federal courts would cease to function as courts of law and would be cast in the role of general complaint bureaus."). Instead, to establish standing as a taxpayer, a plaintiff must establish an injury relevant to her status as a taxpayer—that is, *to the use of her tax dollars*. Here, because Reeves-Toney has alleged no unconstitutional expenditure of public funds to which she has contributed by her payment of taxes, we conclude that she has failed to establish any injury relevant to her status as a taxpayer.

16

¶31 Because we hold that Reeves-Toney has not shown standing as a taxpayer to challenge section 22-63-202(2)(c.5), we do not consider whether she has plausibly alleged that the statute is unconstitutional. We make the rule to show cause absolute and remand the case to the trial court with directions to dismiss Reeves-Toney's complaint.[6]

## IV. Conclusion

¶32 We hold that because Reeves-Toney has alleged no injury based on an unlawful expenditure of taxpayer money, she has failed to demonstrate a clear nexus between her status as a taxpayer and the challenged government action. Reeves-Toney therefore lacks taxpayer standing to bring her constitutional challenge to section 22-63-202(2)(c.5). Accordingly, we make the rule to show cause absolute and remand the case to the trial court with directions to dismiss Reeves-Toney's complaint.

---

[6] The trial court correctly concluded that under *Masters* and *Johnson*, Reeves-Toney lacks individual standing to pursue her complaint.