507 P.3d 94
2021 COA 148 M
Berck NASH, Joanna Nash, Rodney Saunders, Darlene Schmurr-Stewart, Paul Michael Stewart, and Janet Gould, Plaintiffs-Appellants,
v.
Jason MIKESELL, in his official capacity as Sheriff of Teller County, Colorado, Defendant-Appellee.
Court of Appeals No. 20CA0929
Colorado Court of Appeals, Division VI.
Announced December 16, 2021
As Modified on Denial of Rehearing January 13, 2022
Mark Silverstein, Arielle Herzberg, Denver, Colorado; Holland & Hart, LLP, Stephen Masciocchi, Peter Kurtz, Denver, Colorado; Snell & Wilmer, LLP, Stephanie Kanan, Byeongsook Seo, Denver, Colorado, for Plaintiff-Appellant
Paul W. Hurcomb, County Attorney; Sparks Willson, P.C., Eric. V. Hall, Colorado Springs, Colorado, for Defendant-Appellee
Opinion by JUDGE FOX
¶ 1 Berck Nash, Joanna Nash, Rodney Saunders, Darlene Schmurr-Stewart, Paul Michael Stewart, and Janet Gould (collectively, Plaintiffs) appeal the trial court's dismissal of their complaint against Jason Mikesell in his official capacity as Sheriff of Teller County, Colorado. Plaintiffs are residents of Teller County seeking to enjoin Sheriff Mikesell's allegedly unlawful agreement with the United States Immigration and Customs Enforcement (ICE). On appeal, Plaintiffs argue that the court erred by (1) finding that they lack taxpayer standing and (2) denying their request to conduct discovery and hold an evidentiary hearing concerning disputed jurisdictional facts.
¶ 2 Because the Teller County Jail (Jail) relies on taxes to operate, we conclude that the trial court erred by dismissing Plaintiffs' complaint for lack of taxpayer standing. Accordingly, we reverse and remand with directions to reinstate the lawsuit.
I. Background
A. Section 287(g) Agreements
¶ 3 Section 287(g) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 authorizes the Secretary of the Department of Homeland Security (DHS) to enter into agreements with a State or any political subdivision of a State allowing qualified individuals to perform certain functions of an immigration officer. 8 U.S.C. § 1357(g). The agreement in this case indicates that the DHS Secretary has delegated to ICE the authority to enter into 287(g) agreements.
¶ 4 Under a 287(g) agreement, ICE trains local law enforcement officers to perform certain functions normally performed by ICE officers. The Jail Enforcement Officer (JEO) model is one type of 287(g) agreement. As pertinent here, the JEO model empowers participating personnel to issue civil immigration detainers, pursuant to which individuals already in custody whom ICE suspects are removable may be detained for an additional forty-eight hours after they would otherwise be released. Additionally, participating personnel may serve ICE administrative warrants, whereby individuals suspected of 507 P.3d 96 being removable are identified, arrested, and placed in ICE custody. Such actions are performed by ICE-trained participating personnel during the course of their duties at the jail or correctional facility.
B. Teller County Sheriff's Office's 287(g) Agreement
¶ 5 The Teller County Sheriff's Office (TCSO) entered into a 287(g) agreement with ICE on January 6, 2019. The agreement is structured as a JEO model. Under the agreement, "participating TCSO personnel" are "TCSO officers assigned to detention operations ... [who] will exercise their immigration-related authorities only during the course of their normal duties while assigned to TCSO jail/correctional facilities." With the exception of the costs associated with installation and maintenance of ICE-specific technology, the agreement makes TCSO responsible for paying all costs related to executing the 287(g) agreement.
¶ 6 As it happens, because the 287(g) agreement empowers TCSO personnel to perform immigration functions only when they are assigned to duty at the Jail, the Jail's legal status matters. Although Teller County owns the Jail, it is not solely operated by TCSO. Rather, the Teller County Facilities Corporation (TCFC) operates the Jail as an "enterprise" — a government-owned business entity, organized and operated by and for the benefit of Teller County. See Colo. Const. art. 10, § 20 (2)(d); § 24-77-102(3), C.R.S. 2021. We will refer to the TCFC as the Jail Enterprise. The Jail operates by charging fees for providing services — primarily for housing inmates — to various political subdivisions, including Teller County.
¶ 7 The Sheriff explained that the Jail is operated by deputies who serve as regular deputies and Jail deputies. According to the Sheriff, when these deputies are assigned to the Jail, they "chang[e] hats" and are thereby considered employees of the Jail Enterprise. Under this fluid bifurcation, then, when Jail deputies perform their 287(g) duties at the Jail, they are paid by the Jail Enterprise — not TCSO.
C. House Bill 19-1124
¶ 8 As relevant here, in May 2019, the Governor signed House Bill 19-1124 into law. See §§ 24-76.6-101 to - 103, C.R.S. 2021. The statute states, "[r]equests for civil immigration detainers are not warrants under Colorado law" and "continued detention of an inmate at the request of federal immigration authorities beyond when he or she would otherwise be released constitutes a warrantless arrest, which is unconstitutional."[1] § 24-76.6-102(1)(b), C.R.S. 2021. The statute further states, "[a] law enforcement officer shall not arrest or detain an individual on the basis of a civil immigration detainer request." § 24-76.6-102(2). Under the act, a "[c]ivil immigration detainer" includes immigration detainers and administrative warrants. § 24-76.6-101(1), C.R.S. 2021.
D. Lawsuit, Hearing, and Dismissal
¶ 9 Plaintiffs sued Sheriff Mikesell in June of 2019, claiming that the 287(g) agreement violates the Colorado Constitution and House Bill 19-1124. Although the Plaintiffs had not been detained as a result of the 287(g) agreement, they invoked standing by virtue of their status as taxpaying residents of Teller County.
¶ 10 Sheriff Mikesell filed a motion to dismiss. The Sheriff argued that the court should dismiss the complaint because (1) Plaintiffs lack standing; (2) state courts lack jurisdiction to adjudicate matters involving federal immigration law; and (3) the Sheriff had the authority to enter into the agreement.
¶ 11 In support of his standing argument, the Sheriff proffered extrinsic evidence in the form of the 287(g) agreement; an agreement extending the effective period of the 287(g) agreement; an affidavit from Sheryl Decker, the acting Teller County Administrator; and copies of Teller County's financial reports for fiscal years 2014 through 2019. The Sheriff 507 P.3d 97 asserted that 287(g) duties were carried out by deputies only when they are assigned to the Jail, and that, when so assigned, they are considered employees of the Jail Enterprise. Because the Jail Enterprise is a distinct corporate enterprise that does not directly receive tax dollars, the Sheriff argued that Plaintiffs' taxes are not used to pay the Jail deputies to perform 287(g) duties, and therefore taxpayer standing is absent.
¶ 12 Plaintiffs opposed the motion in all respects and requested discovery of jurisdictional facts. At the request of the Sheriff, the trial court heard oral argument on the motion to dismiss but did not allow Plaintiffs their requested discovery. During the hearing, the court asked questions and allowed the parties to present limited argument.
¶ 13 In a written order, the trial court concluded that Plaintiffs lack standing and thus granted the Sheriff's motion to dismiss. In dismissing, the court gave "considerable weight" to Decker's affidavit. Specifically, the court found dispositive her statement that, as a corporate entity, the Jail Enterprise receives no taxpayer dollars to operate the Jail and, thus, by extension, the 287(g) agreement that is operated through the Jail by the Jail deputies. Because no taxpayer dollars were used, the court reasoned that Plaintiffs had suffered no injury in fact as taxpayers, and they therefore lacked standing. The court did not address the parties' other arguments.
II. Applicable Law and Standard of Review ¶ 14 Standing is a threshold issue that must be satisfied for a court to decide a case on the merits. Reeves-Toney v. Sch. Dist. No. 1 , 2019 CO 40, ¶ 20, 442 P.3d 81. To establish standing, a plaintiff must demonstrate "(1) that the plaintiff ‘suffered injury in fact’ and (2) that the injury was to a ‘legally protected interest.’ " Barber v. Ritter , 196 P.3d 238, 245 (Colo. 2008) (quoting Wimberly v. Ettenberg , 194 Colo. 163, 168, 570 P.2d 535, 539 (1977) ). ¶ 15 Although Colorado permits broad taxpayer standing,[2] "the injury-in-fact requirement [provides] conceptual limits to the doctrine when plaintiffs challenge an allegedly unlawful government action." Reeves-Toney , ¶ 23 (quoting Hickenlooper v. Freedom from Religion Found., Inc. , 2014 CO 77, ¶ 12, 338 P.3d 1002 ). Indeed, to establish taxpayer standing, a plaintiff must demonstrate "a clear nexus between h[er] status as a taxpayer and the challenged government action." Id. Taxpayers do not have a legally protected interest in every allegedly unconstitutional expenditure of public funds. Id. at ¶ 30. Rather, a plaintiff must demonstrate an injury "relevant to her status as a taxpayer — that is, to the use of her tax dollars. " Id. ¶ 16 Whether a party has standing is a question of law that we review de novo. Barber , 196 P.3d at 245.
III. Analysis ¶ 17 Owing to its enterprise status, neither the Jail nor the Jail Enterprise is directly allocated tax revenue from the general fund. Instead, as relevant here, the County uses its general fund — which includes Plaintiffs' tax dollars — to pay the Jail Enterprise (which operates the Jail) to house the inmates the Sheriff confines there. The payments from the County to the Jail Enterprise are charged as "fees." Despite the reality that the Jail relies on tax dollars to operate, the trial court concluded that because the Jail, which is operated by a government-owned enterprise, technically funds its operations with "fees" and not taxes, it utilizes no taxpayer funds, thus depriving Plaintiffs of standing.
¶ 18 The trial court elevated form over substance for the purpose of evaluating standing. The Jail and the Jail Enterprise, like the Sheriff and the TCSO, exist to serve a public purpose. The Jail and the Jail Enterprise, 507 P.3d 98 like the Sheriff and the TCSO, are financially supported by the general fund to achieve that public purpose. Aside from the Jail's corporate form, there is no difference in how — and why — the Jail and the Sheriff are funded. For this reason, as far as taxpayer standing is concerned, it is of no moment that the Jail operates as an enterprise. Because the Jail uses Plaintiffs' tax dollars, and since those funds are being used in an allegedly unconstitutional manner, we conclude that Plaintiffs have demonstrated a clear nexus sufficient to confer taxpayer standing. Reeves-Toney , ¶ 23.
¶ 19 In reaching this conclusion, we first note that the Sheriff's argument — which the trial court accepted — is in tension with Teller County's statutory obligation to fund the county jail. See § 17-26-101, C.R.S. 2021 ("There shall be maintained in each county in this state, at the expense of the county , a county jail....") (emphasis added); § 17-26-102, C.R.S. 2021 ("The expenses of keeping the jail in good order ... shall be paid by the county wherein the jail is situated. ") (emphasis added). To be sure, Teller County is complying with this statutory obligation, as evidenced by the Sheriff's concession in his opening brief that the "County general fund is used to pay the jail for county inmate housing." The County cannot now, faced with a taxpayer lawsuit, claim that it does not fund its Jail because of its enterprise status since it retains the statutory obligation to do so — an obligation it has been fulfilling. ¶ 20 Even putting aside this tension, adopting the Sheriff's theory would clash with the foundational tenor of Colorado's taxpayer standing doctrine. Our guiding principle is that Colorado taxpayers have standing "to enjoin an unlawful expenditure of public funds." TABOR Found. v. Colo. Dep't of Health , 2020 COA 156, ¶¶ 12-15, 487 P.3d 1277. To hold, as the Sheriff urges us to do, that the Jail's corporate form shields it from taxpayer suits would prevent Colorado taxpayers from acting on that right even where it is clear that the Jail receives Teller County taxpayers' monies. See, e.g., Dodge v. Dep't of Social Servs. , 198 Colo. 379, 383, 600 P.2d 70, 72 (1979).
¶ 21 The Sheriff avers that Plaintiffs do not satisfy the taxpayer standing doctrine's "clear nexus" test. Reeves-Toney , ¶ 23 (quoting Hickenlooper , ¶ 12 ). He theorizes that, since the Jail labels operating funds "fees" and not "taxes," Plaintiffs cannot clear this threshold. But this interpretation misconstrues the driving purpose of the clear nexus test. Indeed, the cases the Sheriff relies on denied taxpayer standing because the tax dollars at issue were not actually being used in an allegedly unlawful manner — quite unlike the situation alleged here. Id. at ¶ 30 ; Brotman v. E. Lake Creek Ranch, L.L.P. , 31 P.3d 886, 892 (Colo. 2001).
¶ 22 The Sheriff's concession that the money the Jail relies on is actually the Plaintiffs' tax dollars is, in fact, dispositive, since it is this intersection that the Sheriff needed to disprove to invoke the clear nexus limitation. Reeves-Toney , ¶ 30 ; Brotman , 31 P.3d at 892. Instead, the Sheriff asks us to bake into the clear nexus test a formalistic limitation based on the Jail's choice to assume a corporate form. We decline to adopt such an unsupported and logically dubious expansion of the clear nexus doctrine.
¶ 23 Our conclusion is bolstered by the United States and Colorado Supreme Courts' treatment of government-owned corporations as the government itself. In Lebron v. National Railroad Passenger Corporation , 513 U.S. 374, 115 S.Ct. 961, 130 L.Ed.2d 902 (1995), an artist claimed that Amtrak — a congressionally established corporation — violated his First Amendment rights when it refused to display a politically charged advertisement. Id. at 376, 115 S.Ct. 961. Amtrak argued that it is a private corporation and thereby not subject to constitutional challenge. Id. at 392, 115 S.Ct. 961. After noting that Congress created Amtrak to serve the public's need for railroad services and is in fact owned by the federal government, the Court rejected Amtrak's argument, concluding that
[i]t surely cannot be that government, state or federal, is able to evade the most solemn obligations imposed in the Constitution by simply resorting to the corporate form. On that thesis, 507 P.3d 99 Plessy v. Ferguson , 163 U.S. 537, 16 S.Ct. 1138, 41 L.Ed. 256 ... (1896), can be resurrected by the simple device of having the State of Louisiana operate segregated trains through a state-owned Amtrak. Id. at 397, 115 S.Ct. 961. The Court thus concluded that Amtrak is effectively a part of the federal government and thereby subject to the constraints of the United States Constitution. Id.
¶ 24 Our state supreme court applied a similar principle in Colorado Association of Public Employees v. Board of Regents of University of Colorado , 804 P.2d 138 (Colo. 1990). In that case, the plaintiffs challenged the statutory reorganization of the University of Colorado University Hospital into a private, nonprofit corporation. Id. at 139-40. The plaintiffs' constitutional challenges rested on the contention that the hospital, although a private corporation, was effectively a public entity subject to the Colorado Constitution. Id. at 142.
¶ 25 To guide its analysis, the Colorado Supreme Court first noted that "public corporations are created as subdivisions of the state as an expedient device to carry out the functions of government." Id. at 143. Such public corporations are "those created specially for public purposes as instruments or agencies to increase the efficiency of government, supply public wants, and promote the public welfare." Id. (quoting People ex rel. Rogers v. Letford , 102 Colo. 284, 297, 79 P.2d 274, 281 (1938) ). The court concluded that, because the hospital was created and primarily controlled by state officials, it was a public entity subject to the Colorado Constitution. Cf. Colo. Special Dist. Prop. & Liab. Pool v. Lyons , 2012 COA 18, ¶¶ 40-45, 277 P.3d 874 (holding that a corporation formed to facilitate municipal insurance pools was a public entity for purposes of the Colorado Governmental Immunity Act). ¶ 26 We find these cases instructive. Though neither addressed taxpayer standing, both stand for the principle that government-created and -controlled corporations are effectively part of the government itself. Accepting the Sheriff's portrayal of the Jail as a private entity that operates without public funds cuts directly against this principle. The Jail — like Amtrak in Lebron and the hospital in Public Employees — was created and is operated to serve the residents of Teller County. It is thus acting as a part of the government, and the money that it relies on to operate should be treated for taxpayer standing purposes accordingly — that is, as taxpayer dollars.[3] ¶ 27 In addition to their invocation of taxpayer standing, Plaintiffs also claim the trial court erred by failing to allow discovery and to hold an evidentiary hearing. Since we conclude, however, that the Plaintiffs have taxpayer standing, we need not address this argument.
IV. Conclusion
¶ 28 Because Plaintiffs' tax dollars are allegedly being used unconstitutionally, we conclude that Plaintiffs have taxpayer standing to challenge the Sheriff's 287(g) agreement. Accordingly, we reverse the trial court's order concluding that Plaintiffs lacked standing, and remand with directions to reinstate the lawsuit.
JUDGE WELLING and JUDGE JOHNSON concur.
--------
Notes:
[1] A division of this court later dismissed Elder's appeal of the injunction and vacated the judgment after House Bill 19-1124's enactment. Cisneros v. Elder , (Colo. App. No. 19CA0136, Sept. 3, 2020) (not published pursuant to C.A.R. 35(e) ).
[2] Colorado's approach stands in contrast to the United States Supreme Court's narrow view of taxpayer standing. Compare Ariz. Christian Sch. Tuition Org. v. Winn , 563 U.S. 125, 134, 131 S.Ct. 1436, 179 L.Ed.2d 523 (2011) ("Absent special circumstances, ... standing cannot be based on a plaintiff's mere status as a taxpayer."), with Nicholl v. E-470 Pub. Highway Auth. , 896 P.2d 859, 866 (Colo. 1995) ("[T]axpayers have standing to seek to enjoin an unlawful expenditure of public funds.").
[3] At oral argument, counsel for the Sheriff suggested that this is a Taxpayer Bill of Rights (TABOR) case. See Colo. Const. art. 10, § 20. This is incorrect because it does not involve a challenge by Plaintiffs that taxes were allegedly spent or raised in violation of TABOR. Rather, where the Jail Enterprise Fund receives "fees" from certain participating governmental entities and users of the jail but also receives taxpayer monies from the general fund of the county, we simply hold that this does not deprive plaintiffs of taxpayer standing.
--------